990 A.2d 594

**Coralie KURSTIN**

v.

**BROMBERG ROSENTHAL, LLP, et al.**

**No. 2445, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

March 1, 2010.

Ellis J. Koch, Rockville, for appellant.

James E. Dickerman (Alvin I. Frederick, Larry L. Puckett, Eccleston & Wolf, PC, on the brief), Hanover, for appellee.

Panel: MEREDITH, GRAEFF, and CHARLES E. MOYLAN, JR., (Retired, Specially Assigned), JJ.

CHARLES E. MOYLAN, Jr., J., Retired, Specially Assigned.

Our concern is with the threshold of appealability. The particular aspect thereof that commands our attention is the collateral order doctrine. Does the denial in this case of a motion to quash a discovery order qualify as a privileged collateral order within the contemplation of the doctrine? Or shall its review more properly await a final judgment?

## The Procedural Background

The appellee, Bromberg Rosenthal, LLP et al., is a law firm based in Rockville, Maryland. On May 27, 2008, it sued a former client, the appellant Coralie Kurstin, for $25,000 due on an unpaid legal fee. Ms. Kurstin responded with a counterclaim, suing in turn the law firm, along with one of its partners, Barry Rosenthal, Esq., for legal malpractice. Ms. Kurstin prayed a jury trial, thereby transferring the case from the District Court to the Circuit Court for Montgomery County.

Bromberg Rosenthal had earlier represented Ms. Kurstin in a divorce case against her then husband, Ronald Kurstin (now deceased). The case ended with a decree of absolute divorce being granted on December 31, 2002. Incorporated into the divorce decree was a settlement agreement including the following proviso:

Dr. Kurstin is going to continue to maintain his current life insurance policy of 1.5 million dollars for the benefit of the parties' children, and this beneficiary designation will be irrevocable.

Several years later, but while Ronald Kurstin was still alive, Ms. Kurstin learned that her former husband had breached the settlement agreement by removing his four children by Ms. Kurstin as the beneficiaries of the life insurance policy and substituting his girlfriend, Terry LeSohn, as sole beneficiary. Ms. Kurstin consequently retained her current counsel, Ellis J. Koch, Esq., and filed suit against Ronald Kurstin (as well as against Terry LeSohn and the USAA Life Insurance Company) in an effort to prohibit the switch of beneficiaries. The case was filed in the Circuit Court for Montgomery County on June 2, 2006. A Temporary Restraining Order was issued as to USAA Life on June 5, 2006, enjoining it from disbursing any funds under the policy until further order of the court. At a motions hearing on July 21, 2006, settlement negotiations were entered into. As a result, a consent order was entered in the case, providing that $250,000 would be released to the control of Ronald Kurstin under the accelerated death benefit provisions of the policy, thereby reducing the policy's value to $1,250,000 for the benefit of the four children, who remained, however, as the designated beneficiaries. On August 22, 2006, Dr. Kurstin died and the policy provisions to the beneficiaries were paid.

Matters remained quiet for almost two years. When Bromberg Rosenthal sued for its unpaid legal fee on May 27, 2008, however, Ms. Kurstin responded with her suit against the firm for legal malpractice. On the malpractice claim, Ms. Kurstin's position is that the negligence of Bromberg Rosenthal, in failing to notify the life insurance company of the settlement agreement prohibiting a change in beneficiaries, left her with no feasible alternative but to enter into the 2006 consent order by which her children lost a portion of the benefits that was their due.

The position of Bromberg Rosenthal, on the other hand, is that when Ms. Kurstin sued her ex-husband to preclude him from making any changes in the beneficiaries of his life insurance policy, all the legal merit was indisputably on her side and there was, therefore, no sound tactical reason for any

compromise on her part. The yielding to him of control over $250,000 was, in its view, ill-advised.

Battle was thus joined between two law firms as to their respective legal appraisals of the insurance policy controversy and as to appropriate responsive strategies. If the children of Ms. Kurstin, as beneficiaries of their father's life insurance policy, lost $250,000, the critical issue would be which law office, if either, might be found responsible for all, or for some, of that loss?

### Discovery: A Scheduled Deposition

Anticipating an impending clash over competing legal assessments and competing responsive strategies, Bromberg Rosenthal filed a Notice of Deposition Duces Tecum on Ellis J. Koch, Esq., the successor attorney for Ms. Kurstin, announcing that it would take his deposition and instructing him "to bring copies of all documents in his possession related to his representation of Coralie Kurstin in the underlying case." Ms. Kurstin promptly filed a Motion to Quash Notice of Deposition and For Protective Order, along with an accompanying Memorandum of Law. Her core contention was:

> There is no justification in law permitting inquiry into the matters covered by the attorney-client privilege, work product privilege or mental impressions of counsel.

Her supporting memorandum predicted the likely use that Bromberg Rosenthal would make of the deposition.

> *In defending the malpractice action,* Plaintiff/Counter–Defendant *Bromberg Rosenthal seeks the deposition* duces tecum of the undersigned *counsel with the expressed intent of possibly suing undersigned counsel for contribution and indemnification intending to allege negligence in advice as to risk assessment* given to Coralie Kurstin and the children *upon which they based their determination to settle* the Second Case recited above.

(Emphasis supplied).

Bromberg Rosenthal filed its Opposition to Motion to Quash Notice of Deposition along with an accompanying Memoran-

dum of Law. In that memorandum, it acknowledged its basic position in the legal malpractice case.

*Notwithstanding the fact that Mr. Kurstin clearly breached the settlement agreement and the fact that Mr. Kurstin was still alive* at that time *and* therefore *could be compelled to re-designate the* Defendants/Counter–Plaintiff's adult *children as the sole beneficiaries on the* life insurance policy, the Defendant/*Counter–Plaintiff,* through the representation of Ellis Koch, Esquire, *agreed to settle the litigation* against Mr. Kurstin.

(Emphasis supplied).

With direct reference to recognized exceptions to the attorney-client privilege, Bromberg Rosenthal stated its need for the inquiry.

*[I]t is the contention of Rosenthal, LLP* and Barry Rosenthal that Defendant/*Counter–Plaintiff's damages were caused by her settlement of the lawsuit* filed by Mr. Koch and not by any act or omission on the part of Rosenthal, LLP and Barry Rosenthal. In order to support this defense, Rosenthal, LLP and Barry Rosenthal *need to be able to ask questions of both Ms. Kurstin and Mr. Koch related to the settlement* of that lawsuit, that seek information that would, but for the filing of this lawsuit, be protected by the attorney-client privilege.

(Emphasis supplied).

The question posed before Judge Michael D. Mason was that of whether the attorney-client privilege must yield when a client has sued a former law firm for legal malpractice and arguably puts in issue matters that might otherwise be protected by the attorney-client privilege the client enjoys with a successor law firm. The issue raised by the competing memoranda centered on the proper application of *Parler & Wobber v. Miles and Stockbridge,* 359 Md. 671, 756 A.2d 526 (2000); *E.I. du Pont v. Forma–Pack,* 351 Md. 396, 718 A.2d 1129 (1998); and *Hearn v. Rhay,* 68 F.R.D. 574 (D.C.Wash.1975).

On January 8, 2009, Judge Mason filed an Order denying Ms. Kurstin's motion to quash the deposition and for a protec-

tive order. He ruled that the attorney-client privilege between Ms. Kurstin and the successor law firm had been waived. Ms. Kurstin has appealed that order. Bromberg Rosenthal has moved to dismiss the appeal on the ground that it is neither a final order nor immediately appealable under the collateral order doctrine. To make the focus clear, we are dealing with an attempted appeal from a discovery ruling. One party moved to take a deposition. The opposing party moved to quash the request for a deposition. The motion to quash was denied. This appeal is taken from that denial. The appellee, in turn, charges the appellant with jumping the gun with a premature appeal.

### Finality As the Generative Source of Appealability

■ The issue is appealability. To appeal an adverse judicial decision, it should be clear, is not a constitutional right. It is only a grant of legislative grace. To appeal a perceived injustice at the hands of a trial court is not an inherent common law entitlement. It is only a grant of legislative grace. *Jolley v. State*, 282 Md. 353, 355, 384 A.2d 91 (1978); *Sigma Reproductive Health Center v. State*, 297 Md. 660, 664–65, 467 A.2d 483 (1983); *Gruber v. Gruber*, 369 Md. 540, 546, 801 A.2d 1013 (2002). The entire appellate process is but a creature of statute. It may be rescinded tomorrow at the whim of the General Assembly. An appeal may do only what its life-giving statute says it may do. It may do no more. The Promethean fount for an appeal in Maryland is Courts and Judicial Proceedings Article, § 12–301.

> Except as provided in § 12–302 of this subtitle, *a party may appeal from a final judgment entered in a civil or criminal case by a circuit court.* The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been sus-

pended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment.

(Emphasis supplied).

The critical focus is thus upon a final judgment. Section 12–101(f) defines "final judgment":

(f) *Final judgment.—"Final judgment" means a* judgment, decree, sentence, order, determination, *decision* or other action by a court, including an orphans' court, *from which an appeal,* application for leave to appeal, or petition for certiorari *may be taken.*[1]

(Emphasis supplied).

Finding scant comfort in the resolution of the finality question in such definitional ping-pong, Judge Digges acknowledged in *Peat v. Los Angeles Rams,* 284 Md. 86, 91, 394 A.2d 801 (1978):

[A]s this definition implies, *it is ultimately for this Court to decide which judgments* or orders *are final* and, therefore, applicable under section 12–301.

(Emphasis supplied). Resolutely, the *Peat* opinion then set about the process of filling the definitional gap.

[W]e have stated as a general rule that in order to be appealable a "judgment must be so final as to determine and conclude rights involved, or deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding."

*See also Jackson v. State,* 358 Md. 259, 266, 747 A.2d 1199 (2000); *Highfield Water Co. v. Washington County,* 295 Md.

---

**1.** The circularity of reasoning between § 12–301 and § 12–101(f) could qualify as material for a "Who's on first?" comedy routine. Section 12–301 says you may appeal from a final judgment. Section 12–101(f) defines "final judgment" as a decision from which you may appeal. See Abbott & Costello on *Final Judgments.* One can almost hear the note of desperation as Judge Levine lamented in *United States Fire Insurance v. Schwartz,* 280 Md. 518, 374 A.2d 896 (1977), "Whether a judgment is final is not always readily capable of delineation." As Judge Raker remarked in *Brewster v. Woodhaven Building,* 360 Md. 602, 609 n. 1, 759 A.2d 738 (2000), "The statutes concerning final judgments do not take us very far."

410, 415, 456 A.2d 371 (1983); *Schultz v. Pritts,* 291 Md. 1, 5–6, 432 A.2d 1319 (1981). *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767 (1989), added the following supplementary description:

> "If a ruling of the court is to constitute a final judgment, it must have at least three attributes: (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2–602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2–601."

*See also Board of Liquor v. Fells Point Cafe,* 344 Md. 120, 129, 685 A.2d 772 (1996).

Regularly reiterated statements about the purpose of the finality rule, however, have assisted in its sure application even if the statutory definition itself was a bit hazy. In *Jolley v. State,* 282 Md. 353, 356, 384 A.2d 91 (1978), the Court of Appeals explained finality's purpose:

> The purpose of this general rule is, of course, to prohibit piecemeal disposition of litigation. It enables the combining in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results.

*Sigma Reproductive Health Center v. State,* 297 Md. 660, 665, 467 A.2d 483 (1983), spoke to the same effect:

> The primary rationale is to prevent piecemeal appeals and to prevent the interruption of ongoing judicial proceedings. Thus, the rule is designed to promote judicial efficiency and economy.

We may edge, minimally, away from finality on occasions, but finality remains the ever-present polestar.

It is clear that the order of Judge Mason denying the motion to quash the deposition request in this case was not a final judgment within the contemplation of § 12–301. *Jolley v. State,* 282 Md. at 355–56, 384 A.2d 91; *Warren v. State,* 281 Md. 179, 182–83, 377 A.2d 1169 (1977); *United States Fire*

*Ins. v. Schwartz,* 280 Md. 518, 521–24, 374 A.2d 896 (1977); *Mitchell Properties v. Real Estate Title,* 62 Md.App. 473, 482, 490 A.2d 271 (1985); *Addison v. State,* 173 Md.App. 138, 152, 917 A.2d 1200 (2007). Ms. Kurstin, indeed, does not claim otherwise.

### Three Exceptions to the General Rule

There are, however, three exceptions to the § 12–301 finality requirement. Judge Wilner summarized them in *Salvagno v. Frew,* 388 Md. 605, 615, 881 A.2d 660 (2005):

> "[W]e have made clear that the right to seek appellate review of a trial court's ruling ordinarily must await the entry of a final judgment that disposes of all claims against all parties, and that *there are only three exceptions to that final judgment requirement:* appeals from *interlocutory orders specifically allowed by statute;* immediate *appeals permitted under Maryland Rule 2–602;* and appeals from interlocutory rulings allowed under *the common law collateral order doctrine.*"

(Emphasis supplied). *See also Nnoli v. Nnoli,* 389 Md. 315, 324, 884 A.2d 1215 (2005); *Shoemaker v. Smith,* 353 Md. 143, 165, 725 A.2d 549 (1999). The first two of those exceptions are statutory; the third is a product of the common law.

### A. Statutorily Authorized Interlocutory Appeals

The first of the statutory exceptions is set out in § 12–303, which provides that "[a] party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:". The section then goes on to list 13 very specific and highly particularized orders which enjoy this statutory exemption from the final judgment requirement. *See Nnoli v. Nnoli,* 389 Md. at 324, 884 A.2d 1215 ("An order that is not a final judgment is an interlocutory order and ordinarily is not appealable unless it falls within one of the statutory exceptions set forth in § 12–303."); *Salvagno v. Frew,* 388 Md. at 615, 881 A.2d 660; *In re Samone H.,* 385 Md. 282, 316 n. 13, 869 A.2d 370 (2005); *In re Damon M.,* 362 Md. 429, 434, 765 A.2d

624 (2001). The present case does not remotely involve § 12–303 or any of its immediately appealable interlocutory orders.

## B.  Judicially Certified Appeals

The second of the statutory exceptions to the final judgment requirement is set forth in Maryland Rule of Procedure 2–602.[2]  The special function of this exception was well explained by Judge Raker in *Nnoli v. Nnoli*, 389 Md. at 328, 884 A.2d 1215.

> Under Md. Rule 2–602(b), in certain circumstances, a party may appeal from a judgment not disposing of an entire action and one that is not otherwise a final judgment. *This Rule applies to actions involving multiple claims or multiple parties in which a judgment is entered as to fewer than all the parties involved or all the claims in the action. Quartertime Video v. Hanna*, 321 Md. 59, 64, 580 A.2d 1073, 1075 (1990).  Under this Rule, *if the trial court finds expressly in a written order that there is no just reason for delay, the court can order entry of a final judgment as to fewer than all of the claims or parties in the action.*  We have often noted that the discretion afforded under this rule

---

**2.**  Maryland Rule 2–602 provides:

(a) **Generally.**  Except as provided in section (b) of this Rule, an order or other form of decision, however designated, *that adjudicates fewer than all of the claims in an action* (whether raised by original claim, counterclaim, cross-claim, or third-party claim), *or that adjudicates less than an entire claim, or that adjudicates the rights and liability of fewer than all the parties to the action:*

(1)  is not a final judgment;

(2)  does not terminate the action as to any of the claims or any of the parties;  and

(3)  is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

(b) **When Allowed.**  *If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:*

(1)  as to one or more but fewer than all of the claims or parties;  or

(2)  pursuant to rule 2–501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only."

(Emphasis supplied).

is of "limited nature." and is "to be reserved for the 'very infrequent harsh case.' "

(Emphasis supplied). See also *St. Mary's County v. Lacer*, 393 Md. 415, 425–26, 903 A.2d 378 (2006); *Smith v. Lead Industries Association, Inc.*, 386 Md. 12, 21–27, 871 A.2d 545 (2005); *Medical Mutual v. Evander*, 331 Md. 301, 308, 628 A.2d 170 (1993); *Diener Enterprises v. Miller*, 266 Md. 551, 556, 295 A.2d 470 (1972). Maryland Rule 2–602 is not remotely involved in the present case. Ms. Kurstin relies expressly and exclusively upon the third of the exceptions, the collateral order doctrine.

## The Birth of the Collateral Order Doctrine

This third exception to the final judgment requirement, as a product of caselaw, is a common law phenomenon. Although there may have been earlier distant rumblings or antecedent harbingers, the collateral order doctrine, certainly by that name and as a phenomenon worthy of the appellation "doctrine," was born in 1949 in the Supreme Court opinion of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 93 L.Ed. 1528. The birth pangs were not protracted, for this threshold issue of appealability commanded, in the course of a much longer opinion, less than two full pages in the *United States Reports*.

In a stockholder's derivative action, in federal court because of diversity of citizenship, the defendant corporation moved to have imposed on the stockholder plaintiff a New Jersey state requirement that the plaintiff post security for reasonable expenses, including attorneys' fees, in case the suit should prove unsuccessful. After the Court of Appeals for the Third Circuit had ordered that the security be posted, the plaintiff applied for certiorari to the Supreme Court. It was granted. Justice Jackson's opinion made it clear that the case before the Supreme Court would not literally qualify as a final judgment.

> At the threshold we are met with the question whether the District Court's order refusing to apply the statute was an appealable one. *Title 28 U.S.C. § 1291 provides ... for*

*appeal only "from all final decisions of the district courts,"* except when direct appeal to this Court is provided. . . . It is obvious that, *if Congress had allowed appeals only from those final judgments* which terminate an action, *this order would not be appealable.*

337 U.S. at 545, 69 S.Ct. 1221 (emphasis supplied).

In then analyzing the limited scope of appealability, the Supreme Court ascribed a purpose to its controlling statute indistinguishable from the purpose for our controlling statute regularly subscribed to by the Maryland courts. The federal statute on appealability, Title 28 U.S.C., § 1291, parallels almost precisely Maryland's CJP Article, § 12–301.[3]

The effect of the statute is to disallow appeal from any decision which is tentative, informal or incomplete. *Appeal gives the upper court power of review, not one of intervention. So long as the matter remains open,* unfinished or inconclusive, *there may be no intrusion by appeal.* . . .

*Nor does the statute permit appeals,* even from fully consummated decisions, *where they are but steps towards final judgment* in which they will merge. The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results.

337 U.S. at 546, 69 S.Ct. 1221 (emphasis supplied).

As it then prepared to give birth to the collateral order doctrine, the Supreme Court noted that the literal issue before it did not involve the ultimate merits of the main case and

---

**3.** In *Stewart v. State,* 282 Md. 557, 571, 386 A.2d 1206 (1978), Judge Orth commented upon the essential identity between the Maryland and the federal appeal provisions.

*[W]e see no substantive difference between the Maryland statute and the federal statute, granting appellate jurisdiction. The purpose* of Maryland Code (1974) § 12–301 of the Courts and Judicial Proceedings Article, like that of 28 U.S.C. § 1291, *is to prohibit piecemeal disposition of litigation. Both statutes* patently *embody the* traditional and *basic principle of finality* of judgment as a predicate to appellate jurisdiction.

(Emphasis supplied). See also *Parrott v. State,* 301 Md. 411, 423–24, 483 A.2d 68 (1984).

would furthermore be unreviewable at an appeal of the final judgment.

> But *this order* of the District Court *did not make any step toward final disposition of the merits of the case* and will not be merged in final judgment. *When that time comes, it will be too late effectively to review the present order,* and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably. We conclude that *the matters embraced in the decision appealed from are not of such an interlocutory nature as to effect, or to be affected by, decision of the merits of this case.*

337 U.S. at 546, 69 S.Ct. 1221 (emphasis supplied).

The Court then carved out the special doctrine that would thereafter apply to this "small class" of cases.

> This decision appears to fall in *that small class* which finally determine *claims of right separable from and collateral to rights asserted in the action* too important to be denied review and *too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.* . . .

> We hold this order appealable because it is *a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it.* But we do not mean that every order fixing security is subject to appeal. Here it is the right to security that presents a serious and unsettled question.

337 U.S. at 546–47, 69 S.Ct. 1221 (emphasis supplied).

The Supreme Court had occasion to revisit the collateral order doctrine in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), on this second occasion holding that resort to the doctrine was not available. Justice Stevens's unanimous opinion pointed out that the order refusing to certify a class action in that case was not a final judgment according to 28 U.S.C. § 1291 and would have to qualify, if qualify it could, pursuant to the collateral order doctrine.

> Federal appellate jurisdiction generally depends on the existence of a decision by the District Court that "ends the

litigation on the merits and leaves nothing for the court to do but execute the judgment." *An order, refusing to certify, or decertifying, a class does not of its own force terminate the entire litigation* because the plaintiff is free to proceed on his individual claim. Such *an order is appealable,* therefore, *only if it comes within an appropriate exception to the final-judgment rule.* In this case *respondents rely on the "collateral order" exception* articulated by this Court in *Cohen v. Beneficial Industrial Loan Corp.*

437 U.S. at 467–68, 98 S.Ct. 2454 (emphasis supplied). The Court reiterated the required credentials for membership in the "small class" of decisions eligible for immediate review under the collateral order doctrine.

To come within the "small class" of decisions excepted from the final-judgment rule by *Cohen,* the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.

437 U.S. at 468, 98 S.Ct. 2454.

The Court then spelled out why the class certification request being considered failed to qualify for an immediate appeal under the collateral order doctrine.

An order passing on a request for class certification does not fall in that category. First, *such an order is subject to revision* in the District Court. Second, *the class determination generally involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action."* Finally, *an order denying class certification is subject to effective review after final judgment* at the behest of the named plaintiff or intervening class members. For these reasons, as the Courts of Appeals have consistently recognized, *the collateral-order doctrine is not applicable to the kind of order involved in this case.*

437 U.S. at 469, 98 S.Ct. 2454 (emphasis supplied).

In the years since *Coopers and Lybrand* in 1978, the Supreme Court has regularly dealt with the collateral order

doctrine, in almost every case by way of denying immediate appealability. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374–78, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981); *Flanagan v. United States,* 465 U.S. 259, 262–70, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984); *Richardson–Merrell Inc. v. Koller,* 472 U.S. 424, 429–40, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985); *Van Cauwenberghe v. Biard,* 486 U.S. 517, 521–30, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988); *Midland Asphalt v. United States,* 489 U.S. 794, 798–801, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989); *Lauro Lines v. Chasser,* 490 U.S. 495, 497–501, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989); *Digital Equipment v. Desktop Direct,* 511 U.S. 863, 867–84, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); *Swint v. Chambers County Commission,* 514 U.S. 35, 41–43, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995); *Cunningham v. Hamilton County,* 527 U.S. 198, 203–10, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999); *Will v. Hallock,* 546 U.S. 345, 349–55, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006); *Ashcroft v. Iqbal,* 556 U.S. ——, —— – ——, 129 S.Ct. 1937, 1945–56, 173 L.Ed.2d 868, 879–91 (2009); *Mohawk Industries Inc. v. Carpenter,* 558 U.S. ——, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009).

## Maryland Reception of the Collateral Order Doctrine

Maryland first adopted the collateral order doctrine in the opinion of Judge Orth for the Court of Appeals in *Jolley v. State,* 282 Md. 353, 384 A.2d 91 (1978). The Court there held that a pretrial order that an accused was incompetent to stand trial was immediately appealable under the persuasive authority [4] of *Cohen v. Beneficial Loan Corp.* The order was treated as a collateral order subject to immediate appeal under the doctrine.

A decision that an accused is incompetent to stand trial appears to fall in that *small class which finally determines claims of right separable from, and collateral to, rights asserted in the action,* too important to be denied review

---

**4.** The doctrine being adopted is not constitutional, and Maryland is not bound to follow the Supreme Court precedents. Maryland has chosen, however, to follow what it has found to be convincingly persuasive authority.

and *too independent of the cause itself to require that appellate consideration be deferred* until the whole case is adjudicated. *See Cohen v. Beneficial Loan Corp.* Like the order in *Cohen, the order here is a final disposition of a claimed right* which is *not an ingredient of the cause of action* and does not require consideration with it; it *does not make any step toward final disposition of the merits of the case* and will not be merged in final judgment. What the Court said in *Cohen* is applicable here: "When that time comes, it will be too late effectively to review the present order, and the rights conferred by the [constitutions] . . . will have been lost, probably irreparably. We conclude that the matters embraced in the decision appealed from are not of such an interlocutory nature as to affect, or to be affected by, decision of he merits of this case."

282 Md. at 357, 384 A.2d 91 (emphasis supplied).

*Stewart v. State,* 282 Md. 557, 386 A.2d 1206 (1978), followed immediately in the slipstream of *Jolley.* The Court of Appeals held that the denial of a claimed Sixth Amendment speedy trial right was not immediately appealable. The standard of measurement employed was the collateral order doctrine.

[W]e have recognized and applied the final judgment rule's "collateral order" exception articulated in *Cohen v. Beneficial Industrial Loan Corp., supra. Jolley v. State,* 282 Md. 353, 384 A.2d 91 (1978).

282 Md. at 571, 386 A.2d 1206.

The collateral order doctrine was first applied in a civil case in Maryland in *Peat v. Los Angeles Rams,* 284 Md. 86, 394 A.2d 801 (1978). The defendant, Peat & Co., had requested an order to require the law firm representing the Los Angeles Rams to withdraw from the case because one of its partners might be called as a witness in the underlying negligence action. When that motion was denied, Peat sought to take an immediate appeal pursuant to the collateral order doctrine. In holding that the denial of the disqualification ruling was not immediately appealable, Judge Digges's opinion stressed that the doctrine's exemption from the normal finality requirement

was "narrow in scope" and must come, if it is to qualify, within the "small class" of cases that meets each of four requirements.

> This doctrine, recently applied in the criminal context by this Court in *Stewart v. State* and *Jolley v. State* was first articulated by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp. The concept is narrow in scope,* however, for, as the Supreme Court has articulated, *if the order is to come within the "small class"* of cases included in the final judgment rule under *Cohen it must meet four requirements:* [ (1) ] conclusively determine the disputed question, [ (2) ] resolve an important issue[, (3) be] completely separate from the merits of the action, and [ (4) ] be effectively unreviewable on appeal from a final judgment."

284 Md. at 91–92, 394 A.2d 801 (emphasis supplied).

The Court of Appeals further explained in *Public Service Comm'n v. Patuxent Valley,* 300 Md. 200, 206, 477 A.2d 759 (1984), that the collateral order doctrine "treats as final and appealable a limited class of orders which do not terminate the litigation in the trial court." The flood of cases involving the collateral order doctrine that followed was fast and furious. *Clark v. Elza,* 286 Md. 208, 212–13, 406 A.2d 922 (1979); *News American v. State,* 294 Md. 30, 45–46, 447 A.2d 1264 (1982); *Mann v. State's Attorney for Montgomery County,* 298 Md. 160, 163–65, 468 A.2d 124 (1983); *Kawamura v. State,* 299 Md. 276, 282 n. 5, 473 A.2d 438 (1984); *Harris v. David S. Harris, P.A.,* 310 Md. 310, 315–16, 529 A.2d 356 (1987); *Bunting v. State,* 312 Md. 472, 476–77, 540 A.2d 805 (1988). The doctrine had gained firm traction in Maryland.

## Conceptualizing the Collateral Order Doctrine

Although discussions of the collateral order doctrine almost inevitably lapse into the slack usage of referring to instances of immediate appealability as exceptions to or exemptions from the normal final judgment requirement, these instances of immediate appealability are better conceptualized simply as unorthodox varieties of final judgments. In *Midland Asphalt*

*Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989), Justice Scalia explained that appealable collateral orders are considered to be "final judgments."

In *Cohen v. Beneficial Industrial Loan Corp.* (1949), we carved out a narrow exception to the normal application of the final judgment rule, which has come to be known as the collateral order doctrine. *This exception considers as "final judgments,"* even though they do not "end the litigation on the merits," *decisions "which finally determine claims of right separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate jurisdiction be deferred* until the whole case is adjudicated."

(Emphasis supplied).

In *Digital Equipment v. Desktop Direct,* 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994), Justice Souter also undertook an effort at proper conceptualization.

*The collateral order doctrine is best understood not as an exception to the "final decision" rule* laid down by Congress in § 1291, *but as a "practical construction"* of it, *Cohen, supra,* at 546[, 69 S.Ct. 1221]. We have repeatedly held that the statute entitles a party to appeal not only from a district court decision that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment," but also from *a narrow class of decisions that do not terminate the litigation, but must,* in the interest of "achieving a healthy legal system," *nonetheless be treated as "final."*

(Emphasis supplied).

In *Dawkins v. Baltimore City Police Dept.,* 376 Md. 53, 64, 827 A.2d 115 (2003), the Court of Appeals accepted, albeit with a touch of mild pique, this conceptualization:

*The collateral order doctrine is based upon a judicially created fiction, under which certain interlocutory orders are considered to be final judgments, even though such orders clearly are not final judgments. The justification*

*for the fiction is a perceived necessity, in "a very few ...
extraordinary situations," for immediate appellate review.*

(Emphasis supplied).

Whether conceptualized as an exception to the final judg-
ment requirement or as an exceptional form of a final judg-
ment, the collateral order doctrine produces the same results.
The distinction is one without a difference.

### Construing the Collateral Order Doctrine

■  Picking up on the language about the collateral order
doctrine's applying only to a "small class" of cases and about
its being "narrow in scope," the Maryland caselaw consistently
emphasized that the doctrine is to be tightly construed.  As
Judge Wilner stated in *Pittsburgh Corning v. James,* 353 Md.
657, 660–61, 728 A.2d 210 (1999):

> We have made clear, time and again, as has the United
> States Supreme Court, that *the collateral order doctrine is
> a very narrow exception to the general rule* that appellate
> review ordinarily must await the entry of a final judgment
> disposing of all claims against all parties.

(Emphasis supplied).

The limited impact of the collateral order doctrine was again
well stated by Judge Smith in *Sigma Reproductive Health
Center v. State,* 297 Md. 660, 665, 467 A.2d 483 (1983):

> *Notwithstanding the development of the collateral order
> doctrine, the federal courts and this Court,* with relatively
> few exceptions, *have strictly adhered to the final judgment
> rule.*

(Emphasis supplied).  In *In re Franklin P.,* 366 Md. 306, 327,
783 A.2d 673 (2001), Judge Cathell admonished:

> *It is a doctrine that is to be applied "only sparingly."*
>
>   . . . .
>
>   ... *The four elements* of the test *are conjunctive in
> nature* and *in order for a prejudgment order to be appeal-
> able* and to fall within this exception to the ordinary opera-

tion of the final judgment requirement, *each of the four elements must be met.*

(Emphasis supplied).

Judge Eldridge wrote for the Court of Appeals in *In re Foley*, 373 Md. 627, 633–34, 820 A.2d 587 (2003):

> *The doctrine is a very limited exception* to the principle that only final judgments terminating the case in the trial court are appealable. . . .
>
> . . . [I]n Maryland *the four requirements of the collateral order doctrine are very strictly applied,* and *appeals under the doctrine may be entertained only in extraordinary circumstances.*

(Emphasis supplied). *See also Walker v. State,* 392 Md. 1, 15, 895 A.2d 1024 (2006) ("This Court has made clear . . . that the collateral order doctrine in Maryland is very limited."); *Washington Suburban Sanitary Commission v. Bowen,* 410 Md. 287, 296–97, 978 A.2d 678 (2009); *Addison v. Lochearn,* 411 Md. 251, 284–85, 983 A.2d 138 (2009); *Schuele v. Case Handyman,* 412 Md. 555, 989 A.2d 210 (2010) ("[T]his doctrine should be applied sparingly in only the most extraordinary circumstances.").

As Justice Souter made the point for a unanimous Supreme Court in *Digital Equipment v. Desktop Direct,* 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994):

> [W]e have also repeatedly stressed that *the "narrow" exception should* stay that way and *never be allowed to swallow the general rule.*

(Emphasis supplied).

In 2006, the Supreme Court once again affirmed the narrow compass of the doctrine in *Will v. Hallock,* 546 U.S. 345, 350, 126 S.Ct. 952, 163 L.Ed.2d 836:

> *[W]e have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope.* . . . [A]lthough the Court has been asked many times to expand the "small class" of collaterally appealable orders,

*we have instead kept it narrow and selective in its membership.*

(Emphasis supplied).

### False Lights on the Shore

Occasionally opinions that promise to be enlightening expositions of the collateral order doctrine suddenly veer off in an unexpected direction. When that happens, the reader needs to be especially alert. A ruling as to a third party with no connection, or with only the most attenuated connection, to the main case sometimes turns out to be appealable not because of the collateral order doctrine, but because the ruling was truly a final judgment in and of itself with respect to that third party. It was of this phenomenon that the Court of Appeals spoke in *Horsey v. Horsey*, 329 Md. 392, 401, 620 A.2d 305 (1993):

> Contrary to the view expressed by the defendant and the Court of Special Appeals in this case, a trial court's order sometimes may constitute a final appealable judgment even though the order fails to settle the underlying dispute between the parties. Where a trial court's order has "the effect of putting the parties out of court, [it] is a final appealable order."

Several illustrative cases which were ultimately held to be true final judgment cases rather than cases calling for analysis under the collateral order doctrine, although that doctrine had been initially invoked, are *St. Joseph Medical Center v. Cardiac Surgery Associates*, 392 Md. 75, 88–91, 896 A.2d 304 (2006); *Baltimore City Department of Social Services v. Stein*, 328 Md. 1, 12–13, 612 A.2d 880 (1992); *Ashcraft & Gerel v. Shaw*, 126 Md.App. 325, 340–42, 728 A.2d 798 (1999). An opinion that fully explores both possibilities is *Town of Chesapeake Beach v. Pessoa*, 330 Md. at 750–57, 625 A.2d 1014. Close attention to the context is called for in reading such opinions, for the contexts sometimes shift in mid-opinion.

This is precisely the tricky shift in context that the appellant presents us with in her reply brief. There is a critical

distinction between the ultimate merits of a compelled breach of the attorney-client privilege, on the one hand, and the threshold question of whether those merits are immediately appealable, on the other. The substantive fact that one might ultimately prevail on the merits has nothing to do with the temporal issue of when those merits may be appealed. Indeed, the very possibility of ultimately prevailing is a contraindication of immediate appealability.

In reply brief, the appellant, on the appealability issue, relies on the three cases of *Ashcraft & Gerel v. Shaw, supra; Montgomery County v. Stevens,* 337 Md. 471, 654 A.2d 877 (1995); and *Public Service Comm'n v. Patuxent Valley,* 300 Md. 200, 477 A.2d 759 (1984). The statements from those three cases on which the appellant relies, however, have nothing to do with the threshold of appealability. In *Ashcraft & Gerel* the ultimate merits were being discussed because the appeal was deemed to be from a final judgment. The collateral order doctrine, albeit having been mentioned in passing, had been determined to be inapplicable.

Both *Montgomery County v. Stevens* and *Public Service Comm'n v. Patuxent Valley,* as will be more fully discussed *infra,* were also cases that reached and considered the ultimate merits under the "one very unusual" exception to the collateral order doctrine for the special situation where high governmental officials have been subpoenaed as witnesses or have been sought to be deposed. Any statements about inquiring into the thought process, made in the course of justifying the exception, were expressly limited to the thought process of high governmental officials and did not establish a criterion for assessing appealability generally.

The very use by the appellant of these three opinions helps to illustrate the broader point we are attempting to make. When in the course of a single opinion there is a discussion of both 1) the threshold of appealability; and 2) the appeal having been deemed appropriate, the ultimate substantive merits of the case, statements uttered only in that second context should not carelessly be ascribed to the first context.

This requires some delicate footwork when both contexts appear in a single opinion, but the pitfall must be avoided.

## Four Requirements of the Collateral Order Doctrine

■ Although the same four requirements for immediate appealability under the collateral order doctrine have been consistently stated and restated in the Maryland caselaw from our first reception of the doctrine, the clearest setting out of those requirements is that by Judge McAuliffe in *Town of Chesapeake Beach v. Pessoa*, 330 Md. 744, 755, 625 A.2d 1014 (1993):

> This doctrine generally permits an appeal from an order which satisfies the following four requirements:
>
> (1) it must conclusively determine the disputed question;
>
> (2) it must resolve an important issue;
>
> (3) it must be completely separate from the merits of the action; and
>
> (4) it must be effectively unreviewable on appeal from a final judgment.

■ Using those controlling criteria, an ad hoc application of those requirements to the ruling being appealed in this case reveals clearly the ruling's fatal non-appealability. The first inquiry is that of whether Judge Mason's denial of Ms. Kurstin's motion to forbid the deposition of her present attorney constitutes a "conclusive determination of the disputed question." The "disputed question" is whether the deposition would improperly breach the attorney-client privilege between Ms. Kurstin and her current law firm. We hold that Judge Mason's ruling did not "conclusively determine" that question. The attorney-client privilege is only a rule of evidence. It is one of a group of evidentiary rules collectively known as the "testimonial privileges." Its breach occurs when evidence about a confidential communication is erroneously used in a legal proceeding. The privilege does not guard against the preliminary revelation of information *per se*. Kenneth S. Brown, *McCormick on Evidence* (6th ed.2006), § 72.1 "The

Purpose of Rules of Privilege," pp. 341–42 addresses the essential nature of a privilege.

Again, true *rules of privilege operate* generally *to prevent revelation of confidential matter within the context of a judicial proceeding.* Thus, *rules of privilege do not speak* directly *to* the question of *unauthorized revelations* of confidential matter *outside the judicial setting,* and *redress for such breaches of confidence must be sought in the law of torts or professional responsibility.*

(Emphasis supplied).

The disputed question in this case will not be "conclusively determined" until the contents of any communication between Ms. Kurstin and Ellis J. Koch, Esq., are either received in or rejected as evidence at the trial of the legal malpractice case. This "disputed question" will remain in dispute long after the taking of the deposition. It has not yet been "conclusively determined."

The second requirement for invoking the collateral order doctrine is that the order in question shall "resolve an important issue." We would agree with Ms. Kurstin that whether her attorney-client privilege with her successor law firm must yield in the trial of her legal malpractice suit against her former law firm is "an important issue." That, however, is not all there is to the requirement. It is further required that Judge Mason's ruling shall have "resolved" that issue. For the reasons given in our discussion of the first requirement, this important issue will not have been resolved until the trial judge rules upon the ultimate admissibility of the evidence at the trial of the legal malpractice case. Judge Mason's ruling was but a preliminary skirmish in an impending battle yet to be fought. It was a harbinger but not a final resolution.

■ It is the third requirement that utterly blows away Ms. Kurstin's protective umbrella of the collateral order doctrine. The ruling in question must be "completely separate from the merits of the action." The ostensibly confidential communication between Ms. Kurstin and Ellis J. Koch, Esq., would presumably have covered Koch's assessment of her legal case

challenging the change in beneficiaries, the chances of winning the case, the time and expense and possible risk in fighting the case, and the strategic pluses and minuses of settling the case through the consent order of July 21, 2006. Far from being "completely separate from the merits," those matters will be at the very core of the legal malpractice case. Bromberg Rosenthal will unquestionably be arguing that any loss suffered by Ms. Kurstin's children was caused by Ms. Kurstin's mistaken decision to settle the case against her former husband based on the negligently unwise advice of her present attorney. At the very least, Bromberg Rosenthal will be arguing that such bad advice was at least partially, even if not totally, responsible for any loss, and that Bromberg Rosenthal, if found liable to Ms. Kurstin, would be entitled to contribution or indemnification from Koch. Necessarily involved in Judge Mason's preliminary ruling, therefore, are the inextricable merits of the ultimate legal malpractice case itself. The eggs cannot be unscrambled. It was in just such a situation that Judge Meredith observed for this Court in *Addison v. State,* 173 Md.App. 138, 156, 917 A.2d 1200 (2007):

> Most discovery orders do not comply with the third require-ment of the collateral order doctrine, as they generally are not completely separate from the merits of the lawsuit. Instead, *"a typical discovery order [is] aimed at ascertain-ing critical facts upon which the outcome of the . . . contro-versy might depend."*

(Emphasis supplied). *See also In re Foley,* 373 Md. 627, 635, 820 A.2d 587 (2003).

■ The fourth and final requirement is that Judge Mason's ruling "must be effectively unreviewable on appeal from a final judgment." That is diametrically not the case here. Should Ms. Kurstin ultimately lose the legal malpractice case and should a part of Bromberg Rosenthal's successful defense have been the use at trial of privileged communications be-tween Ms. Kurstin and the successor law firm that should have remained inviolately confidential, the ruling permitting such a use would be the centerpiece of Ms. Kurstin's appeal from the final judgment. It would unquestionably be re-

viewed. See *Addison v. State,* 173 Md.App. at 156, 917 A.2d 1200; *In re Foley,* 373 Md. at 636, 820 A.2d 587. At such a hypothesized appeal, moreover, the ruling under review will not be Judge Mason's pretrial decision to let a deposition go forward, of course, but the trial decision itself that actually admits the evidence.

*In re Franklin P.,* 366 Md. at 327, 783 A.2d 673, clearly established that the four requirements of the collateral order doctrine are "conjunctive in nature" and that "each of the four elements must be met." In this case, Ms. Kurstin has failed to satisfy a single one of the four requirements. Judge Mason's ruling is not immediately appealable.

### "Fishing" For a Dispositive Trope

At oral argument, the appellant repeatedly brandished the mantra of "fishing expedition" to tarnish the scheduled deposition as frivolous if not, indeed, spurious. Quite aside from the lack of support in the caselaw, the overworked metaphor is simply too open-ended to have utility as a dispositive criterion. In a watered-down sense of the metaphor, any request for information, including a question on examination in the courtroom, might be labeled as a "fishing expedition." A subpoena for the production of evidence, even with compelling reason to believe that it exists, could similarly be blithely dismissed as a "fishing expedition." A trial itself, as a search for truth, is in some sense of the phrase a "fishing expedition." At one extreme of the continuum, idly dropping a hook and line into the bathtub might be deemed a fishing expedition. At the other extreme, grandiloquently lifting the lid from the platter after ordering Dover sole might be deemed the same. The range of possible meaning is so vast as to make the metaphor useless as a legal criterion. It is the appellant who is fishing for a dispositive figure of speech, but comes up with an empty hook.

### The Categorical Non–Appealability of Discovery Rulings

If the appellant's particularized plight, in failing to satisfy any of the four criteria of the collateral order doctrine,

were not dire enough, she is whipsawed by a double disqualification. Thus far, a conclusive case for the non-appealability of Judge Mason's ruling has been arrived at by measuring the characteristics of this particular ruling against the four requirements of the collateral order doctrine. Even without such an ad hoc examination, however, the non-appealability of a ruling of this type could also be effectively established on a categorical basis. With one notable exception, discovery rulings, as a category, do not qualify for immediate review under the collateral order doctrine. Maryland in this regard is essentially following the lead of the Supreme Court in rejecting cases under the collateral order doctrine not after a plodding case-by-case analysis but on a more sweeping categorical basis. See *Mohawk Industries Inc. v. Carpenter*, 558 U.S. ——, ——, 130 S.Ct. 599, 605, 175 L.Ed.2d 458, 466–67 (2009):

> In making this determination [that discovery rulings are not appealable], *we do not engage in an "individualized jurisdictional inquiry."* Rather, *our focus is on "the entire category to which a claim belongs."* As long as the class of claims, taken as a whole, *can be adequately vindicated by other means, "the chance that* the litigation at hand might be speeded, or a *'particular injustice' averted," does not provide a basis for jurisdiction under sect. 1291.*

(Emphasis supplied). See also *Digital Equipment v. Desktop Direct*, 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 439–40, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985).

The exclusion of discovery rulings, either by way of granting or denying discovery, from immediate appellate review under the collateral order doctrine is virtually an absolute. *St. Mary's County v. Lacer*, 393 Md. 415, 428–31, 903 A.2d 378 (2006); *St. Joseph Medical Center v. Cardiac Surgery Associates*, 392 Md. 75, 87, 896 A.2d 304 (2006) ("It is firmly settled in Maryland that, except in one very unusual situation, interlocutory discovery orders do not meet the requirements of the collateral order doctrine and are not appealable under that doctrine."); *In re Foley*, 373 Md. 627, 636, 820 A.2d 587 (2003)

("The only circumstance in which we have upheld the appealability of interlocutory discovery orders involves a singular situation far removed from the facts of the instant case."); *Goodwich v. Nolan*, 343 Md. 130, 141 n. 8, 680 A.2d 1040 (1996) ("In Maryland, discovery orders, being interlocutory in nature, are not ordinarily appealable prior to a final judgment terminating the case."); *Montgomery County v. Stevens*, 337 Md. 471, 477, 654 A.2d 877 (1995); *Department of Social Services v. Stein*, 328 Md. 1, 7, 612 A.2d 880 (1992) ("[T]he order from which it has appealed is a discovery order, which normally is interlocutory and, consequently, unappealable."); *Addison v. State*, 173 Md.App. at 156, 917 A.2d 1200 ("[T]he Court of Appeals has been unswerving in its position that discovery rulings (at least those which affect only the parties to the action and do not compel discovery from a high government official) may not be appealed in advance of the entry of a final judgment.").

### A Limited Exception To the Non-Appealability of Discovery Rulings

The "one very unusual situation" referred to by *St. Joseph Medical Center* is, in effect, the exception that proves the rule. In *Addison v. State*, 173 Md.App. at 154, 917 A.2d 1200, Judge Meredith, in identifying the unique exception, pointed his finger precisely at this leak in the dike of non-appealability as the "one very unusual exception."

> [T]he Court of Appeals *distilled the limited scope of the collateral order doctrine to "one very unusual situation" that "involves trial court orders permitting the depositions of high level governmental decision makers"* under certain circumstances. (Quoting *St. Joseph Medical Center v. Cardiac Surgery*, 392 Md. at 87–88, 896 A.2d 304).

(Emphasis supplied).

*St. Joseph Medical Center* had looked to two prior instances in which immediate appeals had been permitted from the ordering of depositions (but not from the denying of depositions) of high governmental officials. Those cases were *Montgomery County v. Stevens*, 337 Md. 471, 654 A.2d 877 (1995)

and *Public Service Comm'n v. Patuxent Valley,* 300 Md. 200, 477 A.2d 759 (1984). With respect to both cases, *St. Joseph Medical Center,* 392 Md. at 88, 896 A.2d 304, observed:

> *The "singular situation" in which* this Court has held interlocutory *discovery orders are appealable under the collateral order doctrine, involves* trial court *orders permitting the deposition of high level governmental decision makers* for the purpose of "extensively probing ... their individual decisional thought processes.

(Emphasis supplied).

■ A more recent example has now been added to that small and unique class of cases with *Ehrlich v. Grove,* 396 Md. 550, 914 A.2d 783 (2007), in which an immediate appeal was permitted in order to forfend a discovery order being directed at the Governor of Maryland. The Court of Appeals noted that "an interlocutory appeal is appropriate under these extraordinary circumstances involving discovery orders directed to a high government official." 396 Md. at 572, 914 A.2d 783. See also *Mandel v. O'Hara,* 320 Md. 103, 134, 576 A.2d 766 (1990). Even with this limited class of exemptions from the non-appealability of interlocutory discovery rulings, the exemption is exclusively one-dimensional. If the order in question denied, rather than granted, the requested discovery, it is non-appealable. As *Public Service Comm'n v. Patuxent Valley* made clear:

> Orders refusing discovery are normally not immediately appealable, whether involving government officials or not.

300 Md. at 210, 477 A.2d 759.

No such extraordinary circumstances were present in this case. The case involves depositions being ordered not from a high governmental official but from a private law firm and a private client. As was also noted in *Patuxent Valley,* 300 Md. at 210, 477 A.2d 759:

> [D]iscovery orders, directed at other than high level government decision makers, are ordinarily not appealable.

That generic disqualification holds steady in this case. The appeal must be dismissed.

## The Double Whammy of A Discovery Ruling and the Attorney–Client Privilege

For a case most directly on point, we turn again to the Supreme Court. On December 8, 2009, it rendered its decision in the case of *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. ——, 130 S.Ct. 599, 175 L.Ed.2d 458. Mohawk Industries was being sued in a pending class action for conspiring to drive down its employees' wages by hiring undocumented immigrants. Carpenter, a shift supervisor for Mohawk, was unaware of the class action suit when he informed Mohawk's human resources department that the company was, indeed, employing undocumented immigrants. Mohawk officials directed Carpenter to meet with the counsel who were defending the company in the class action suit. Counsel pressured Carpenter to get him to recant his statement about the company's use of undocumented immigrants. When Carpenter refused to do so, Mohawk fired him for what, he claimed, were false and spurious reasons. In his case against Mohawk for illegal termination of employment, Carpenter moved to compel Mohawk to produce information about his conversations with the attorneys representing Mohawk in the class action suit. Mohawk refused to do so, invoking the attorney-client privilege. The District Court granted Carpenter's motion to compel discovery, ruling that the attorney-client privilege had been waived. Mohawk appealed. The Court of Appeals for the Eleventh Circuit dismissed Mohawk's appeal, holding that it did not qualify as an appealable order under the collateral order doctrine. The Supreme Court granted certiorari.

At the outset of her opinion for the Court, Justice Sotomayor described the issue as one involving a "disclosure order adverse to the attorney-client privilege."

> *The question* before us *is whether disclosure orders adverse to the attorney-client privilege qualify for immediate appeal under the collateral order doctrine.* Agreeing with the Court of Appeals, we hold that *they do not.* Postjudgment appeals, together with other review mechanisms,

suffice to protect the rights of litigants and preserve the vitality of the attorney-client privilege.

558 U.S. at ——, 130 S.Ct. at 603, 175 L.Ed.2d at 464 (emphasis supplied).

The Court stated that "we have generally denied review of pretrial discovery orders," 558 U.S. at ——, 130 S.Ct. at 606, 175 L.Ed.2d at 467, quoting with approval 15B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* (2d ed. 1992), § 3914.23, p. 123:

> [T]he rule remains settled that most discovery rulings are not final.

While acknowledging the importance of the attorney-client privilege, the Supreme Court nonetheless maintained:

> *The crucial question,* however, *is not whether an interest is important in the abstract; it is whether deferring review until final judgment* so imperils the interest as to justify *the cost of allowing immediate appeal of the entire class of relevant orders.* We routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system.

558 U.S. at ——, 130 S.Ct. at 606, 175 L.Ed.2d at 467 (emphasis supplied).

At the most fundamental level, a violation of the attorney-client privilege is readily reviewable upon the appeal of the final judgment of the entire case.

> In our estimation, *postjudgment appeals generally suffice to* protect the rights of litigants and *assure the vitality of the attorney-client privilege. Appellate courts can remedy the improper disclosure* of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: *by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence.*

558 U.S. at ——, 130 S.Ct. at 606–07, 175 L.Ed.2d at 468 (emphasis supplied). It is clear that the breach of the testi-

monial privilege occurs not when the information is revealed but when it is used, directly or derivatively, at trial.

Justice Sotomayor's opinion also made it clear that the Supreme Court's rejection under the collateral order doctrine of discovery or disclosure rulings involving the attorney-client privilege is a broad categorical rejection and will not yield to case-by-case exceptions.

> That a fraction of orders adverse to the attorney-client privilege may nevertheless harm individual litigants in ways that are "only imperfectly reparable" does not justify making all such orders immediately appealable as of right under § 1291.

558 U.S. at ——, 130 S.Ct. at 608, 175 L.Ed.2d at 470. See also *Digital Equipment v. Desktop Direct,* 511 U.S. at 868, 114 S.Ct. 1992 ("[T]he issue of appealability ... is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a 'particular injustice' averted ... by a prompt appellate court decision."); *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 439, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) ("[T]his Court has expressly rejected efforts to reduce the finality requirement of sect. 1291 to a case-by-case determination of whether a particular ruling should be subject to appeal.").

The Supreme Court's denial of appealability was not just of the particular attempted appeal in this case but of the broad class of appeals categorically.

> In sum, we conclude that *the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege.* Effective appellate review can be had by other means.

558 U.S. at ——, 130 S.Ct. at 609, 175 L.Ed.2d at 471 (emphasis supplied).

Maryland's approach to the non-appealability of a discovery ruling compelling the disclosure of information presumably protected by the attorney-client privilege has been as generic and categorical as has been that of the Supreme Court. In

*Electronic Data Systems Federal Corporation v. Westmoreland Associates, Inc.,* 311 Md. 555, 556, 536 A.2d 662 (1988), the review of the Court of Appeals was limited to the single

jurisdictional issue of whether the interlocutory orders of the trial court, which compelled the production of documents alleged to be privileged under the attorney client relationship, were properly appealable under the collateral order doctrine.

Without any necessity of probing further into the particular circumstances of the discovery ruling in issue or into the details of the underlying case, the Court broadly

concluded that *the collateral order doctrine is not applicable* in this case *as the orders of the trial court are subject to effective review on appeal* from a final judgment.

*Id.* (emphasis supplied).

### Conclusion

Whether the ruling in this case is measured on an ad hoc basis against the four conjunctive criteria of the collateral order doctrine or is treated categorically as within the class of discovery rulings adverse to the attorney-client privilege, either of which approaches alone would be fatal to the appellant's immediate cause, it fails to qualify for immediate appealability under the collateral order doctrine. By way of the case-by-case long way around or by way of the categorical short cut, this appeal is off the tracks.

**APPEAL DISMISSED; COSTS TO BE PAID BY APPELLANT.**