## PEAT, MARWICK, MITCHELL & COMPANY *v.* THE LOS ANGELES RAMS FOOTBALL COMPANY

[No. 10, September Term, 1978.]

*Decided November 27, 1978.*

*Stephen H. Sachs,* with whom were *Robert B. Levin* and *Frank, Bernstein, Conaway & Goldman* on the brief, for appellant.

*Douglas D. Connah, Jr.,* with whom were *Francis D. Murnaghan, Jr.,* and *Bayard Z. Hochberg* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

Here, as referee, we are called upon to decide a preliminary dispute that has arisen just prior to the opening kickoff in what portends to be a hard-fought legal spectacle. Although the main contest concerns the alleged negligence of petitioner Peat, Marwick, Mitchell & Company (Peat & Co.) in preparing a financial statement relied on by respondent Los Angeles Rams Football Company (Rams) when it entered into a 1972 franchise exchange agreement with the Baltimore Football Club, Inc., this underlying cause of action has been benched pending settlement of the scrimmage now before us. Instead, the issue that is presented on this appeal is the propriety of permitting the well-known Baltimore law firm of Venable, Baetjer and Howard (Venable) to continue to serve as counsel for the Rams when one of its partners may be called upon to testify in the negligence action. Peat & Co.'s motion to require withdrawal of Venable as respondent's counsel was denied by the Circuit Court for Baltimore County (MacDaniel, J.) and it noted an appeal, but the Court of Special Appeals, acting pursuant to Maryland Rule 1035 b 1, dismissed it as "not allowed by law." We granted certiorari and, likewise having

reached the conclusion that the circuit court's decision is not appealable at this time, affirm the judgment of the Court of Special Appeals.

The circumstances that form the backdrop for this case, concerning as they do the financial intricacies involved in the exchange of the two professional football franchises, are quite complex; however, in order to resolve the narrow issue presented by this appeal we are here required to relate only a skeletal outline of the facts. In 1967, Johnny Unitas, the legendary quarterback of the Baltimore Colts, negotiated an agreement with Baltimore Football, Inc., the entity that then owned the Colts professional football team, whereby Unitas was to receive the sum of $25,000 per year for a period of ten years beginning immediately after the end of his active playing career. This contract and another amending it in 1970 were allegedly negotiated and drafted to a substantial degree by Jacques T. Schlenger, Esq., a partner in Venable. Following, but not directly related to the execution of the various agreements with Unitas, Baltimore Football, Inc., entered into negotiations with Nine to Eleven, Inc., the owner of the Los Angeles Rams professional football team, concerning the possibility of a franchise exchange. An agreement for such an exchange was reached in 1972, also allegedly negotiated and drafted to a considerable extent by Mr. Schlenger, through which each corporate entity contracted to acquire the other's assets and assume its liabilities. As the basis for determining the assets and liabilities of Baltimore Football, Inc., the exchange agreement incorporated by reference a financial report that was prepared and certified by Peat & Co. at the instance of Baltimore. The report, however, did not list the Unitas deferred compensation contract as a liability, or otherwise mention it. As a consequence of this claimed neglect, Baltimore Football, Inc., which has been renamed the Los Angeles Rams Football Company, concluded it was prohibited from insisting that its obligation under the contract with Unitas was transferred to the new Colt owners.[1] Thus, in

---

1. Nine to Eleven, Inc., also altered its name to reflect its new acquisition and became the Baltimore Football Club, Inc.

September 1973 the Rams, represented by Venable, filed a $300,000 damage suit in the Circuit Court for Baltimore County against Peat & Co. alleging that it was negligent in omitting the Unitas obligation from the financial report.[2]

Although the parties engaged in extensive discovery and other pretrial activities over a three-year period following the institution of the suit, it was not until July 1977, just six months before the date trial was scheduled to commence, that Peat & Co. filed its motion to prohibit any member of Venable from acting as counsel to the Rams in the pending litigation. Peat & Co. contended that Mr. Schlenger, who has not appeared as attorney of record or otherwise formally participated in the case, would in all probability be called as a witness which, in turn, required that he and each of the members of his law firm be disqualified in accordance with the dictates of DR 5-102 of the Code of Professional Responsibility.[3] The circuit court found that "substantial hardship" would result for the Rams if Venable was removed at this late date, and, therefore, as authorized by DR 5-101 (B) (4), declined to grant Peat & Co.'s disqualification

---

2. The record indicates that Unitas, after being traded in 1972 to the San Diego Chargers football team, retired as an active player in 1974. The Rams have paid him annually since that time in accord with the deferred compensation agreement.

3. By Rule 1230 this Court adopted the American Bar Association Code of Professional Responsibility as set forth in Appendix F of the Maryland Rules. DR 5-102 provides:

> (A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4).

> (B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

4. DR 5-101 (B) (4) of the ABA Code of Professional Responsibility as set forth in Appendix F of the Maryland Rules declares:

> (B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a

motion.[4] It is the appealability of this order to which we now turn our attention.

As the appellate jurisdiction of the courts of this State in both civil actions and criminal causes is at this time delimited by statute,[5] *see, e.g., Jolley v. State,* 282 Md. 353, 355, 384 A. 2d 91, 93 (1978); *Warren v. State,* 281 Md. 179, 182, 377 A. 2d 1169, 1171 (1977); *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 500, 331 A. 2d 55, 64 (1975), our analysis of the appealability of the circuit court's order must begin with an examination of the applicable legislative enactment, found in Md. Code (1974), § 12-301 of the Courts Article. In pertinent part it provides:

> [A] party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law.

Our primary task here is to determine whether the order refusing to disqualify Venable from further participation in this case is a "final judgment" within the meaning of section 12-301.[6] The General Assembly has defined a final judgment as "a judgment, decree, sentence, order, determination, decision, or other action by a court ... from which an appeal, application for leave to appeal, or petition for certiorari may be taken," Md. Code (1974), § 12-101 (f) of

---

lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

\* \* \*

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

5. We have never definitively determined whether the right of appeal from one court level to another may be authorized and controlled under the Court of Appeals' constitutional power, Md. Const., Art. IV, § 18A, to regulate practice and procedure in the courts of this State.

6. There are certain interlocutory orders that the legislature has made immediately appealable under Md. Code (1974, 1978 Cum. Supp.), § 12-303 of the Courts Article. The petitioners have invoked only one of these statutory exemptions in support of their appealability contentions, an argument with which we deal *infra.*

the Courts Article; but, as this definition implies, it is ultimately for this Court to decide which judgments or orders are final and therefore appealable under section 12-301. *Warren v. State, supra,* 281 Md. at 183, 377 A. 2d at 1171.

In our prior attempts at determining if a given trial court action is appealable, this Court has found that the question of "[w]hether a judgment is final is not always readily capable of delineation." *United States Fire Ins. v. Schwartz,* 280 Md. 518, 521, 374 A. 2d 896, 898 (1977). Nonetheless, guided by the principle that piecemeal appeals are to be scorned, *e.g., Jolley v. State, supra,* 282 Md. at 356, 384 A. 2d at 93; *Warren v. State, supra,* 281 Md. at 183, 377 A. 2d at 1171; *United States Fire Ins. v. Schwartz, supra,* 280 Md. at 524, 374 A. 2d at 900, we have stated as a general rule that in order to be appealable a "judgment must be so final as to determine and conclude rights involved, or deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding." *United States Fire Ins. v. Schwartz, supra,* 280 Md. at 521, 374 A. 2d at 899 (citation omitted). In applying this rule to the present case, it should be remembered that the subject matter of the litigation before the circuit court is the liability, if any, of Peat & Co. emanating from its preparation of the financial report used in the franchise exchange agreement. Certainly, the trial court's refusal to disqualify respondent's counsel has in no way precluded Peat & Co. from fully defending its interest in the pending law suit or concluded the question of its liability and thus in this context is not a final judgment. *See Almon v. American Carloading Corporation,* 380 Ill. 524, 44 N.E.2d 592, 596 (1942); *Middleberg v. Middleberg,* 427 Pa. 114, 233 A. 2d 889, 890 (1967); *Knox v. Long,* 228 S.W.2d 367, 368 (Tex. Ct. App. 1950).

Peat & Co., however, asserts that this determination does not end the matter because the circuit court's order is appealable under the so-called "collateral order exception" appended to the final order requirement. This doctrine, recently applied in the criminal context by this Court in *Stewart v. State,* 282 Md. 557, 571, 386 A. 2d 1206, 1213 (1978),

and *Jolley v. State, supra,* 282 Md. at 357, 384 A. 2d at 94, was first articulated by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U. S. 541, 545-47, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949), in dealing with the appealability of an order denying a motion for the posting of security for costs under the federal appeals statute that is similar to section 12-301. The concept is narrow in scope, however, for, as the Supreme Court has articulated, if the order is to come within the "small class" of cases included in the final judgment rule under *Cohen* it must meet four requirements: "[T]he order must [(1)] conclusively determine the disputed question, [(2)] resolve an important issue [, (3) be] completely separate from the merits of the action, and [(4)] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U. S. 463, 468, 98 S. Ct. 2454, 57 L.Ed.2d 351 (1978) (footnote omitted); *see Cohen v. Beneficial Industrial Loan Corp:, supra,* 337 U. S. at 546.

Supporting Peat & Co.'s contention that the circuit court's determination was a "collateral order" final under *Cohen,* is an impressive array of federal and state authorities that have held that a trial judge's denial of a motion to disqualify counsel is immediately appealable.[7] *E.g., Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F. 2d 800, 805 (2d Cir. 1974) (en banc); *Kroungold v. Triester,* 521 F. 2d 763, 765.(3d Cir. 1975); *MacKethan v. Peat, Marwick, Mitchell & Co.,* 557 F. 2d 395, 396 (4th Cir. 1977) (per curiam); *Zylstra v. Safeway Stores, Inc.,* 578 F. 2d 102, 104 n. 1 (5th Cir. 1978); *Melamed v. ITT Continental Baking Co.,* 534 F. 2d 82, 84 (6th Cir. 1976) (per curiam); *Schloetter v. Railoc of Indiana, Inc.,* 546 F. 2d 706, 709 (7th Cir. 1976); *Meat Price Investigators Ass'n v. Spencer Foods,* 572 F. 2d 163, 165 (8th Cir. 1978); *Fullmer v. Harper,* 517 F. 2d 20, 21 (10th Cir. 1975) (per curiam); *Meehan v. Hopps,* 45 Cal. 2d 213, 288 P. 2d 267, 270 (1955); *Kraus v. Davis,* 6 Cal. App. 3d 484, 85 Cal. Rptr. 846, 847 (1970); *see Borden v. Borden,* 277 A. 2d 89, 90 (D.C. 1971); *cf. Cord v. Smith,* 338 F. 2d 516, 521 (9th Cir. 1964) (denial of

7. We do not consider the extent, if any, to which Rule 605 (Multiple Claims — Judgment Upon) impacts upon the appeal from a *Cohen*-type order.

motion to disqualify reviewable by writ of mandamus). *See generally* 11 Ga. L. Rev. 705 (1977); 30 Vand. L. Rev. 259 (1977); 1975 Wash. U.L.Q. 212. Illustrative of the analysis of those courts that find the denial of a disqualification motion immediately appealable is the leading case of *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra*. Prior to *Silver Chrysler,* the United States Court of Appeals for the Second Circuit had distinguished between the appealability of an order refusing to disqualify and one disqualifying an attorney. *Compare Harmar Drive-In Theatre v. Warner Bros. Pictures,* 239 F. 2d 555, 556 (2d Cir. 1956) (orders granting and denying motions to disqualify counsel both appealable), *cert. denied,* 355 U. S. 824 (1957) *with Fleischer v. Phillips,* 264 F. 2d 515, 517 (2d Cir.) (denial of motion to disqualify counsel, as opposed to order granting motion, not appealable), *cert. denied,* 359 U. S. 1002 (1959). The en banc court in *Silver Chrysler,* in determining whether this distinction was indeed viable, found the two types of orders indistinguishable for the purpose of appeal because both types met the prerequisites for an appealable collateral order under *Cohen*:

> There is no sufficient basis for distinguishing between the two. In both situations the order is collateral to the main proceeding yet has grave consequences to the losing party, and it is fatuous to suppose that review of the final judgment will provide adequate relief. [496 F. 2d at 805.][8]

Although the authority supporting the appealability of the circuit court's order is substantial, it is by no means universally accepted. Several other courts have declined to permit appeals from trial court rulings denying motions to disqualify counsel specifically because such dispositions could not fulfill the elements necessary for finality under the *Cohen* doctrine. *Community Broadcasting of Boston, Inc. v.*

---

8. We note with interest, however, that some members of the Second Circuit appear to be having second thoughts about the court's decision in *Silver Chrysler. See* Allegaert v. Perot, 565 F. 2d 246, 251 (2d Cir. 1977); Van Graafeiland, *Lawyer's Conflict of Interest — A Judge's View* (pt. II), N.Y.L.J., July 20, 1977, at 1, col. 2.

*F.C.C.,* 546 F. 2d 1022, 1027-28 (D.C. Cir. 1976); *Gomes v. Heirs of Kauwe,* 52 Hawaii 126, 472 P. 2d 119, 120 (1970) (per curiam); *see Almon v. American Carloading Corporation,* 380 Ill. 524, 44 N.E.2d 592, 596 (1942); *Chicago Title & Trust Co. v. Guaranty Bank,* 59 Ill. App. 3d 362, 375 N.E.2d 522, 523-24 (1978); *cf. Middleberg v. Middleberg,* 427 Pa. 114, 233 A. 2d 889, 890-91 (1967). *See generally* Comment, *The Appealability of Orders Denying Motions for Disqualification of Counsel in the Federal Courts,* 45 U. Chi. L. Rev. 450 (1978). After making our analysis as to whether the failure to disqualify an attorney is immediately appealable, we conclude it is not because there are two *Cohen* elements lacking: first, the order is effectively reviewable on appeal after a final judgment and second, it is not of such importance as to warrant immediate appellate consideration.[9]

Focusing initially on whether there can be an effective review of the trial court's order after a final judgment, we cannot accept as valid the reasoning of those courts that think it "fatuous to suppose that review of the final judgment will provide adequate relief." *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra,* 496 F. 2d at 805. This is not an order such as one involving the posting of pretrial security, *Cohen v. Beneficial Industrial Loan Corp., supra,* 337 U. S. at 545-47, or the right to a reduction of bail, *Stack v. Boyle,* 342 U. S. 1, 6, 72 S. Ct. 1, 96 L. Ed. 3 (1951); because error in their disposition is not likely to affect the outcome of the trial, such orders, in effect, become moot if appeal is delayed until entry of a normal final judgment. In the case of orders refusing disqualification, however, if it can be shown on appeal that the movant was prejudiced by the denial of his request, reversal and a new trial will follow. Nor do we accept as correct the argument that review upon appeal from a final judgment will be ineffective because Peat & Co. must bear the cost and inconvenience of a trial, harms that a reversal on appeal will not recompense. That Peat & Co. will have to

---

9. The "conclusive" and "collateral" prongs of the *Cohen* analysis seemingly are satisfied in the case of orders dealing with disqualification of attorneys. *See* Comment, *The Appealability of Orders Denying Motions for Disqualification of Counsel in the Federal Courts,* 45 U. Chi. L. Rev. 450, 456 n. 29 (1978).

bear such a burden does not present a better case for the effective unreviewability of an order denying disqualification than could be made for all interlocutory orders.

Somewhat akin to this latter argument, petitioner further contends that Venable's continued representation of the Rams will violate Canon 9's mandate against the appearance of impropriety resulting in a weakening of public confidence in the judicial system, a harm that can only be avoided by immediate review. *See* Code of Professional Responsibility, Canon 9, Md. Rules, Appendix F. Even if we assume that the public is aware of disqualification disputes, so as to be able to perceive whether any apparent impropriety exists, and that the more nebulous concept of injury to the public, as opposed to harm to the individual litigant, has any weight in this context, *but see Baker v. United States Steel Corp.,* 492 F. 2d 1074, 1078-79 (2d Cir. 1974); *cf. W. T. Grant Co. v. Haines,* 531 F. 2d 671, 677 (2d Cir. 1976), we think this argument misinterprets the nature and applicability of Canon 9's admonition to avoid improper appearances. It is true that to comply with the dictates of Canon 9 a member of the Bar would have to "[a]void [e]ven the [a]ppearance of [p]rofessional [i]mpropriety," but to hold each attorney literally to such a strict standard does not conform with the purpose for which this broad statement was drawn. As the drafters of the ABA Code recognized, "[t]he Canons are statements of axiomatic norms expressing in general terms the standards of professional conduct expected of lawyers . . . [and] embody the general concepts from which . . . the Disciplinary Rules are derived." ABA Code of Professional Responsibility, Preliminary Statement, at 1 (1976). In contrast, they described the Disciplinary Rules, upon which Peat & Co. principally rely, as "mandatory in character . . ., stat[ing] the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." *Id.* By definition, therefore, the appearances of impropriety with which we are concerned are those arising from a violation of the Disciplinary Rules, Canon 9 being only a general standard that serves solely as a warning to be watchful of all situations

in which an improper appearance could arise.[10] Disqualification, therefore, should occur only after the court has determined there is "at least a reasonable possibility that some specifically identifiable impropriety [prohibited by a Disciplinary Rule] did in fact occur." *Woods v. Covington Cty. Bank,* 537 F. 2d 804, 813 (5th Cir. 1976) (footnote omitted). Thus, a trial court's finding that there is no violation of the Disciplinary Rules is tantamount to a determination that no appearance of impropriety was present sufficient to truly harm the public's perception of the judicial system. As such, this supposedly unreviewable facet that arises from the denial of a disqualification motion really has no independent significance in answering the question of whether a trial court's denial of a motion to disqualify is indeed unreviewable.

Considering next the "importance" requirement of the *Cohen* doctrine, we are again convinced that the circuit court's order here should not be immediately appealable. In discussing this prong of the *Cohen* analysis, the Second Circuit has denoted this consideration's role as one of differentiating between those interlocutory orders that are immediately appealable because "a decision will settle a point once and for all, as it did in the *Cohen* case," and those that are unappealable until final judgment because they will only "open the way for a flood of appeals concerning the propriety of a [trial] court's ruling on the facts of a particular case." *Weight Watchers of Phila. v. Weight Watchers Int.,* 455 F. 2d 770, 773 (2d Cir. 1972); *see Donlon Industries, Inc. v. Forte,* 402 F. 2d 935, 937 (2d Cir. 1968). In dealing with a motion to disqualify counsel, a request that is addressed to the discretion of the trial court, *see, e.g., Central Milk Products Co-op v. Sentry Food Stores,* 573 F. 2d 988, 991 (8th Cir. 1978); *W. T. Grant Co. v. Haines,* 531 F. 2d 671, 676 (2d Cir. 1976); *Waters v. Western Company of North America,* 436 F. 2d 1072, 1073 (10th Cir. 1971), it becomes obvious that a ruling

---

**10.** Further, it should be obvious that by its very wording Canon 9 is too broad to serve as a disqualification standard because "[a]ppearances often are deceiving," J. Bartlett, *Familiar Quotations* 75 (14th ed. 1968) (attributed to Aesop's fable *A Wolf in Sheep's Clothing*), and cannot, without some objective basis, be used to separate an individual from his chosen counsel.

upon it is not of such import as to require immediate appellate review. Rather than being a decision whose general applicability demands immediate consideration, this ruling is one that seldom warrants reversal in that such action requires a finding of abuse of discretion on the part of the trial court. *See Donlon Industries, Inc. v. Forte, supra,* 402 F. 2d at 937; 9 *Moore's Federal Practice* ¶ 110.13 [10], at 190 (2d ed. 1975) (disqualification questions "are almost invariably questions of fact best left to trier of fact"); *cf. Community Broadcasting of Boston, Inc. v. F.C.C.,* 546 F. 2d 1022, 1028 n. 39 (D.C. Cir. 1976) (because appealing party in Second Circuit must show challenged behavior of opposing counsel will taint underlying trial, irrepressible harm, which was supposed foundation of *Silver Chrysler* rationale, present in few cases thereby weakening Second Circuit's basis for upholding appealability of order). To expose the appellate courts of this State to a potential avalanche of such interlocutory appeals when the likelihood of discovering reversible error is so small would not be a wise use of judicial resources. Thus, orders denying motions to disqualify counsel do not present "serious and unsettled question[s]," *Cohen v. Beneficial Industrial Loan Corp., supra,* 337 U. S. at 547, of such importance as to authorize review before the entry of a final judgment at the normal time.

If any further support is needed for the result reached here, we think it evident in what is seemingly the inconsistent application of the *Cohen* doctrine by several of the courts finding disqualification orders directly appealable. Certainly, a court's refusal to disqualify counsel is not any more important than is a trial judge's refusal to recuse himself or to enter a discovery order, rulings found not to be appealable under *Cohen* by many of the same courts that hold attorney disqualifications immediately reviewable. *See, e.g., Scarrella v. Midwest Federal Savings and Loan,* 536 F. 2d 1207, 1210 (8th Cir.) (per curiam) (judicial disqualification), *cert. denied,* 429 U. S. 885 (1976); *U.A.W. v. National Caucus of Labor Committees,* 525 F. 2d 323, 325 (2d Cir. 1975) (discovery order); *Vuono v. United States,* 441 F. 2d 271, 272 (4th Cir. 1971) (per curiam) (judicial disqualification); *Rosen v.*

*Sugarman,* 357 F. 2d 794, 796 (2d Cir. 1966) (same). Such inconsistency casts further doubt upon the validity of the *Silver Chrysler* rule.[11]

Finally, petitioner argues that this order is appealable as the denial of an injunction under Md. Code (1974, 1978 Cum. Supp.), § 12-303 (c) (1) of the Courts Article.[12] *See Meehan v. Hopps,* 45 Cal. 2d 213, 288 P. 2d 267, 269 (1955). In answering this contention, we think it only necessary to quote the analysis of the Supreme Court of Illinois when it was presented with the issue of whether an order disqualifying counsel was immediately appealable:

> To bring their case within the [Illinois interlocutory appeal] statute, defendants contend the order ... possessed the elements of restraint and the enjoining of action which, it is said, makes it of the same character as an interlocutory order for injunction. The purpose of an interlocutory

---

11. In contending that the circuit court's order refusing to disqualify Venable comes within the collateral order exception, petitioner also asserts that this Court has previously accepted and broadly applied, sub silentio, the reasoning of *Cohen,* citing Citizens Coordinating Comm. v. TKU, 276 Md. 705, 709-10, 351 A. 2d 133, 136-37 (1976) (trial court denial of intervention of right appealable final order); A & P Co. v. Royal Crown, 243 Md. 280, 284-86, 220 A. 2d 598, 600-01 (1966) (trial court order striking cross-claim appealable as final order); Montgomery County v. Walker, 228 Md. 574, 578-79, 180 A. 2d 865, 867 (1962) (circuit court order requiring zoning board member to vote on matter even though he had disqualified himself is appealable); City of Baltimore v. Moore, 209 Md. 516, 522-23, 121 A. 2d 857, 860-61 (1956) (trial court order denying party right to bring in another as party plaintiff is final order); Northwest'n Nat. Ins. Co. v. Rosoff, 195 Md. 421, 427-33, 73 A. 2d 461, 463-66 (1950) (denial of motion to implead third party defendant is final order). To be consistent, Peat & Co. argues, we must follow these precedents and accept the appeal. Petitioner's analysis is incorrect, however, for it is clear that the orders involved in each of the cited cases were appealable as final under this State's appeals statute rather than an "collateral orders," for in each instance they either "determine[d] or conclude[d] rights involved or den[ied] the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding." United States Fire Ins. v. Schwartz, 280 Md. 518, 521, 374 A. 2d 896, 899 (1977) (citation omitted).

12. Section 12-303 of the Courts Article in part provides:

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

\* \* \*

(c) An order:

(1) Granting or dissolving an injunction ....

injunction is to preserve the rights of some one or more of the parties and continue the property and the rights therein in status quo until the cause can be disposed , of on the merits. The order [disqualifying the attorney] has no bearing on the merits of the litigation ... [and] was not of the character intended by the legislature to be covered by ... the [interlocutory appeal] statute. [Almon v. American Carloading Cor-poration, 380 Ill. 524, 44 N.E.2d 592, 595 (1942).]

See *Fred Weber, Inc. v. Shell Oil Co.,* 566 F. 2d 602, 606 n. 6 (8th Cir. 1977) (citing federal authority holding attorney disqualification orders not appealable as injunctions), *cert. denied,* 436 U. S. 905 (1978).

In reaching the conclusion that the failure to disqualify Venable is not now appealable, we intimate no opinion concerning the possibility for immediate review if an order of disqualification is issued by the court.[13] *See generally In re Investigation Before April 1975 Grand Jury,* 531 F. 2d 600, 605 n. 8 (D.C. Cir. 1976); Comment, *The Appealability of Orders Denying Motions for Disqualification of Counsel in the Federal Courts,* 45 U. Chi. L. Rev. 450, 458 n. 39 (1978). As to the present appeal, however, we think it must be dismissed.

> *Judgment of the Court of Special Appeals affirmed.*
> *Costs to be paid by petitioner.*

---

**13.** Neither do we express any opinion on the standing of Peat & Co. to raise the disqualification issue in light of DR 5-102 (A)'s declaration that disqualification results only if "a lawyer in his firm ought to be called as a witness *on behalf of his client"* and DR 5-102 (B)'s admonition that disqualification is necessary when "a lawyer in his firm may be called as a witness *other than on behalf of his client"* and "it is apparent that his testimony *is or may be* prejudicial to his [, the witness-lawyer's,] client." (Emphasis added.) See note 3, *supra,* for the entire text of these rules.