*In re: C.E.*, No. 2, September Term, 2017, Opinion by Adkins, J.

**INFANTS — DEPENDENT AND NEGLECTED CHILDREN — REVIEW — RIGHT OF REVIEW, PARTIES, AND DECISION REVIEWABLE:** A parent of a child in need of assistance ("CINA") was not entitled to an immediate appeal of an interlocutory order from the juvenile court waiving the obligation of the Department of Social Services to provide reasonable reunification efforts. Such an order does not create the right to an immediate appeal because it does not deprive a parent of care or custody of a child.

Circuit Court for Baltimore City
Case No.:  814192003
Argued: September 6, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 2

September Term, 2017

IN RE: C.E.

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Adkins, J.

Filed: October 20, 2017

In this CINA[1] case, we settle conflicting decisions from the Court of Special Appeals on the appealability of a juvenile court's order waiving the government's obligation to provide reasonable reunification efforts to families. In doing so, we also clarify which actions by a juvenile court "deprive" a parent of care or custody of a child as outlined by Maryland Code (1973, 2013 Repl. Vol.), § 12-303(3)(x) of the Courts and Judicial Proceedings Article ("CJP").

We issued a writ of certiorari to consider two questions. First, did the Court of Special Appeals err in holding that the court's order waving reasonable reunification efforts was not a final order and not appealable? Second, did the juvenile court err in holding that a waiver of reasonable efforts pursuant to Md. Code. (1973, 2013 Repl. Vol., 2016 Supp.), CJP § 3-812 was constitutionally permitted?

We shall answer the first question no, holding that Petitioner had no right to an interlocutory appeal. We do not reach the second question.

## I. FACTS AND LEGAL PROCEEDINGS

C.D., the mother of C.E., has an extensive history with Baltimore City Department of Social Services ("Department"). Under a series of saddening circumstances, all six of C.D.'s children have been adjudged CINA. The first finding occurred in 1998 and the latest in 2015. Juvenile courts have involuntarily terminated C.D.'s parental rights for four of her six children.

---

[1] A "CINA" case refers to cases under Maryland Code (1973, 2013 Repl. Vol., 2016 Supp.), subtitle 8 of the Courts and Judicial Proceeding Article ("CJP") for the protection of children "coming within the provisions of [the] subtitle." CJP § 3-802(a)(1). "'CINA' means 'child in need of assistance.'" CJP § 3-801(g).

## A.  Involuntary Terminations of C.D.'s Parental Rights

C.D. suffers from several mental illnesses that prevent her from properly caring for her children.  C.D.'s previous mental health diagnoses include paranoia, adjustment disorder, major depression, somatization disorder, borderline personality disorder, mania, and bipolar affective disorder.  C.D. also demonstrated "fits of rage" and underwent psychiatric hospitalizations, yet she refused regular and continuing mental health treatment.  Despite numerous services and referrals, juvenile courts repeatedly have found that C.D. displayed a complete inability to care for her children, control her emotions, or effectively communicate with her children and the Department.

As a result of her inability to care for her children, primarily attributed to her mental illnesses, C.D. lost parental rights to four of her six children.  C.D.'s second child, I.S., was found to be a CINA in 1998.  Her third child, L.B., was also found to be a CINA in 1999.  In 2003, a juvenile court terminated C.D.'s parental rights over both I.S., and L.B. after a contested hearing.  The Court of Special Appeals affirmed the juvenile court's termination of C.D.'s parental rights.  C.D.'s fourth and fifth children, J.D. and M.D., were both found to be CINA in 2012.  After a contested hearing in 2014, C.D.'s parental rights with respect to J.D. and M.D. were also terminated.  Again, the Court of Special Appeals affirmed.  When C.D. had her sixth child in 2014, the Department intervened once again.

## B.  CINA Finding Regarding C.E.

C.E. was born prematurely in May of 2014.  In June, C.E. was transferred from the neonatal intensive care unit at Johns Hopkins to Mount Washington Pediatric Hospital after complications arising from C.E.'s low birth weight.  In July, before C.E. could leave the

hospital in the care and custody of C.D., the Department filed a CINA Petition for shelter care of C.E. in the Circuit Court for Baltimore City. The Department alleged that C.D. had untreated mental health conditions that prevented her from caring for C.E. Two weeks later, the juvenile master approved the CINA petition and ordered C.E. into the Department's custody. The Department then transferred custody of C.E. to relatives. An adjudicatory hearing was set for October of 2014. This hearing was postponed five times. The juvenile court agreed to four of these postponements to allow C.D. to hire an attorney—she hired and fired several in this timeframe.

On June 16, 2015, nearly a year after the Department filed its Petition, the court conducted an adjudicatory hearing and found C.E. was a CINA.[2] Shortly thereafter, the Department requested a waiver of the Department's obligation to continue reasonable reunification efforts.

### C. Department's Waiver Request

The Department expended extensive resources and took substantial steps to provide C.D. with reasonable reunification services. The Department, through an assigned caseworker, made repeated referrals to assist C.D. in obtaining mental health treatment.

---

[2] The Court of Special Appeals affirmed the lower court's CINA findings:

> The juvenile court's findings were supported by the evidence presented and the court's CINA determination was supported by the law. Accordingly, we hold that the trial court did not err nor abuse its discretion when it found C.E. to be CINA and committed him to the custody of the Department.

*In re C.E.*, No. 0925, 2015 WL 9183397, at *10 (Md. Ct. Spec. App. Dec. 15, 2015), *cert. denied*, 446 Md. 705 (2016).

3

C.D. refused to leave her home for mental health treatment. To appease C.D. the Department contacted twelve mental healthcare providers but each refused to provide in-home care to C.D. A social worker attempted to give C.D. psychiatric resources, but C.D. promptly ripped up the resources and handed them back to the social worker. C.D. rejected the transportation offered by the Department for visits with C.E. Although C.D. had a period of supervised bi-weekly visits with C.E., these visits were marred by C.D.'s emotional outbursts.

On July 9, 2015, the Department filed a Motion to Waive Reasonable Efforts to Reunify pursuant to CJP § 3-812. This statute permits the juvenile court to waive the Department's obligation to continue reunification efforts under certain conditions. Specifically, CJP § 3-812(c) allows the Department to "immediately request the court to find that reasonable efforts to reunify the child with the child's parent or guardian are not required," if "any of the circumstances specified in subsection (b) of this section exists . . . ." Subsection (b)(3) permits the Department to request a waiver if "a parent or guardian: . . . [h]as involuntarily lost parental rights of a sibling of the child."

The Department argued that it should not continue to provide reasonable reunification services because C.D. involuntarily lost her parental rights to four siblings of C.E. C.D., opposing the motion, argued that CJP § 3-812 violated her fundamental right to parent by unconstitutionally penalizing her for contesting the previous termination of her parental rights because the statute would not apply had she consented to the previous terminations. Further, she argued that application of the statute would end her ability to reunify with C.E.

4

After the court heard argument on the Department's Motion and C.E.'s response, it granted the Department's Motion. The hearing judge noted C.D.'s four previous contested terminations of parental rights and explained that "in my view of the entire record of this case . . . it is mandatory for me to grant the Department's motion under [CJP] 3-812." In his written order, the hearing judge again noted "[C.D.'s] four prior appellate-sustained [terminations of parental rights] over [C.D.'s] objection for [C.E.'s] siblings." C.D. immediately appealed the order waiving reasonable efforts to the Court of Special Appeals.

### D. C.D.'s Appeal of the Waiver Order

The intermediate appellate court, in an unreported decision, affirmed the waiver. *In re C.E.*, No. 0464, 2016 WL 7235560 (Md. Ct. Spec. App. Dec. 14, 2016). The Court did not address the question C.D. submitted,[3] but instead held that an order waiving reasonable reunification efforts is not immediately appealable because it was merely an interlocutory order and not a final judgment. *Id.* at *7.

The intermediate court also considered whether CJP § 12-303 permitted the Court to hear the appeal. *Id.* at *5–7. CJP § 12-303(3)(x) provides that a party may appeal any

---

[3] C.D. raised the following question for review before the Court of Special Appeals:

> After conducting a hearing under Md. Code Ann., Cts. & Jud. Proc. § 3-812, did the juvenile court properly waive the Department's obligation to make reasonable efforts to reunify Ms. D with C.E., when Ms. D's parental rights to four of her other children has been terminated involuntarily and the Department had already provided extensive, but unsuccessful reunification services to Ms. D for many years?

*In re C.E.*, No. 0464, 2016 WL 7235560, at *1 (Md. Ct. Spec. App. Dec. 14, 2016).

5

interlocutory order "[d]epriving a parent, grandparent, or natural guardian of the care and custody of his child, or changing the terms of such an order[.]" The Court considered whether the waiver order deprives a parent of the care and custody of her child, or changes the terms of such an order. *Id.* at *5. It turned to *In re Karl H.*, 394 Md. 402 (2006), which explained that the question depends on "'whether the order and the extent to which that order changes the antecedent custody order.'" *Id.* at *7 (quoting *In re Karl H.*, 394 Md. at 430). Reasoning that the order regarding reunification services did not change any other order in the case, alter a permanency plan, or deprive C.D. of the care or custody of her child, the panel majority dismissed C.D.'s appeal. *Id.*

A dissenting judge disagreed with the Court's rejection of C.D.'s appeal and reasoned that that the panel majority improperly characterized the waiver order as one that would not affect C.D.'s care or custody. *Id.* at *9.

The 2016 decision conflicts with an earlier decision from the Court of Special Appeals. In that case, *In re Joy D.*, 216 Md. App. 58 (2014), a different panel considered the same question: whether a party may immediately appeal an order waiving a department's obligation to provide reasonable reunification services. *Id.* at 61. The intermediate appellate court, in a unanimous opinion, reasoned that a waiver order was appealable as a change to the terms of another order regarding a parent's care or custody of her child. *Id.* at 73 n.10. ("An order waiving the requirement to make reasonable efforts to reunify a parent with his or her child is appealable pursuant to CJP § 12-303(3)(x) . . . .").

6

## II. DISCUSSION

C.D. makes two arguments before this Court. First, she contends that the juvenile court's order waiving reasonable reunification efforts deprived her of care and custody of C.E, thereby creating an immediate right to an appeal. Second, C.D. argues that CJP § 3-812—facially and as applied to her—violates the constitutional guarantees of substantive due process, procedural due process, and equal protection.

### A. Standard of Review

Appellate courts do not disturb the juvenile court's findings of fact unless they are clearly erroneous. *In re Yve S.*, 373 Md. 551, 586 (2003) (citing *Davis v. Davis*, 280 Md. 119, 125–26 (1977)). We review the juvenile court's decisions on matters of law without deference. *Id.* Here, the parties do not dispute the juvenile court's finding with respect to the only relevant fact—that C.D.'s parental rights to four of C.E.'s siblings were involuntarily terminated.

The juvenile court determined, as a matter of law, that CJP § 3-812 permitted the waiver of the Department's obligation to provide reasonable reunification efforts. The Court of Special Appeals concluded that C.E. has no right to appeal the juvenile court's non-final interlocutory order. We review both of these legal determinations without deference. *Id.*

7

## B. Appealability of the Juvenile Court's Waiver

Our decision regarding the appealability of the juvenile court's waiver of the Department's obligation to provide reasonable reunification services first requires an exploration of the CINA statutory scheme and the progression of such cases.

### *1. CINA Statutory Framework and Proceedings*

A local social services department can file a petition to remove a child from a home to protect a child "from serious immediate danger." Md. Code (1973, 2013 Repl. Vol.), CJP § 3-815(b). The department must then seek an immediate court authorization to continue emergency shelter care placement of the child. *Id.* § 3-815(c). The parties have a right to an attorney "at every stage" of any CINA proceeding. *Id.* § 3-813(a). To justify continuing emergency shelter care of a child, the court must determine that returning the child to the child's home "is contrary to the safety and welfare of the child"; and removal "is necessary due to an alleged emergency situation and in order to provide for the safety of the child"; or "[r]easonable efforts were made but were unsuccessful in preventing or eliminating the need for removal of the child from the home." *Id.* § 3-815(d). The court must also decide whether the Department has made reasonable efforts to assist in returning the child to the home, or the reasonableness of the absence of such efforts. *Id.* § 3-815(e)(3).

After the emergency shelter care hearing, the juvenile court must hold an adjudication hearing. The rules of evidence apply and the juvenile court must decide "whether the allegations in the petition . . . are true." *Id.* §§ 3-801(c); 3-817. The court must find: (1) that the child is abused, neglected, has a developmental disability, or a mental

disorder, and (2) the child's parent, guardian, or custodian is unable or unwilling to provided appropriate care and attention to the child and the child's needs. *Id.* § 3-801(f). If the court makes this finding, it then holds a disposition hearing. *Id.* § 3-819(a); *see also* Maryland Rule 11-115(a). At this hearing, the court will determine whether a child requires assistance, and if the court makes such a determination, it will then decide the intervention necessary "to protect the child's health, safety, and well-being." CJP § 3-801(m). If the child is not a CINA, the court must dismiss the case. *Id.* § 3-819(b)(1)(i)(4).

If the child is committed to the care of the Department, the court must also conduct a permanency planning hearing wherein the court shall decide the long-term plan for the child's placement. *Id.* § 3-823(b). The court must decide which placement—of several possibilities enumerated in the statute—would be best for the child. *Id.* §§ 3-823 (e)(1)(i)(1)–(5).[4] The court must also give "primary consideration" to the best interests of

---

[4] Md. Code (1973, 2013 Repl. Vol., 2016 Supp.), CJP § 3-823 provides:

> (e)(1) At a permanency planning hearing, the court shall:
> (i) Determine the child's permanency plan, which, to the extent consistent with the best interests of the child, may be, in descending order of priority:
>> 1. Reunification with the parent or guardian;
>> 2. Placement with a relative for:
>>> A. Adoption; or
>>> B. Custody and guardianship under § 3-819.2 of this subtitle;
>> 3. Adoption by a nonrelative;
>> 4. Custody and guardianship by a nonrelative under § 3-819.2 of this subtitle; or
>> 5. For a child at least 16 years old, another planned permanent living arrangement that:
>>> A. Addresses the individualized needs of the child, including the child's educational plan,

9

the child factors listed in Md. Code (1984, 2012 Repl. Vol., 2016 Supp.), § 5-525(f)(1) of

the Family Law Article ("FL").[5]  FL § 5-525(e)(1) requires the Department to make

"reasonable . . . efforts to preserve and reunify families."  The Department need not

---

emotional stability, physical placement, and socialization needs; and
B. Includes goals that promote the continuity of relations with individuals who will fill a lasting and significant role in the child's life; and
(ii) For a child at least 14 years old, determine the services needed to assist the child to make the transition from placement to successful adulthood.

[5] Md. Code (1984, 2012 Repl. Vol., 2016 Supp.), § 5-525(f)(1) of the Family Law Article provides:

(f)(1) In developing a permanency plan for a child in an out-of-home placement, the local department shall give primary consideration to the best interests of the child, including consideration of both in-State and out-of-state placements. The local department shall consider the following factors in determining the permanency plan that is in the best interests of the child:
(i)  the child's ability to be safe and healthy in the home of the child's parent;
(ii)  the child's attachment and emotional ties to the child's natural parents and siblings;
(iii)  the child's emotional attachment to the child's current caregiver and the caregiver's family;
(iv)  the length of time the child has resided with the current caregiver;
(v)  the potential emotional, developmental, and educational harm to the child if moved from the child's current placement; and
(vi)  the potential harm to the child by remaining in State custody for an excessive period of time.

continue reasonable reunification efforts if "a court orders that reasonable efforts are not required under [CJP] § 3-812 . . . ." *Id.*

CJP § 3-812 plays an important role in CINA litigation. This section permits a department to request waiver of reasonable reunification efforts to reunify a child with the parents if, among other possible conditions listed in the statute, a parent has involuntarily lost parental rights to one of the child's siblings.[6] The juvenile court, pursuant to CJP § 3-

---

[6] CJP § 3-812(b) states:

In a petition under this subtitle, a local department may ask the court to find that reasonable efforts to reunify a child with the child's parent or guardian are not required if the local department concludes that a parent or guardian:
(1) Has subjected the child to any of the following aggravated circumstances:
    (i) The parent or guardian has engaged in or facilitated:
        1. Chronic or severe physical abuse of the child, a sibling of the child, or another child in the household;
        2. Chronic and life-threatening neglect of the child, a sibling of the child, or another child in the household;
        3. Sexual abuse of the child, a sibling of the child, or another child in the household; or
        4. Torture of the child, a sibling of the child, or another child in the household;
    (ii) The parent or guardian knowingly failed to take appropriate steps to protect the child after a person in the household inflicted sexual abuse, severe physical abuse, life-threatening neglect, or torture on the child or another child in the household;
    (iii) The child, a sibling of the child, or another child in the household has suffered severe physical abuse or death resulting from abuse by the parent or guardian or another adult in the household and all persons who could have inflicted the abuse or caused the death remain in the household; or

11

812(d) may waive the Department's reasonable reunification effort obligation if it finds, by clear and convincing evidence, one of the conditions listed in CJP § 3-812(b).

### *2. Appealable Orders in CINA Proceedings*

The right to an appeal is not a constitutional right, but rather, as Judge Moylan has noted, "a grant of legislative grace." *Kurstin v. Bromberg Rosenthal, LLP*, 191 Md. App. 124, 131 (2010), *aff'd*, 420 Md. 466, (2011) (citing *Jolley v. State*, 282 Md. 353, 355 (1978)). Maryland's statutes determine this Court's appellate jurisdiction. Accordingly, an appeal must be legislatively permitted. *Gruber v. Gruber*, 369 Md. 540, 546 (2002) (citing *Kant v. Montgomery Cty.*, 365 Md. 269, 273 (2001)).

The General Assembly has outlined permitted appeals in CJP Title 12. Section 12-301 permits appeals of final judgments, unless an appeal is specifically prohibited by § 12-302.[7] CJP § 12-101(f) defines a "final judgment" as a "judgment, decree, sentence, order, determination, decision or other action by a court, including an orphans' court from which

---

(iv) The parent or guardian has abandoned the child;
(2) Has been convicted, in any state or any court of the United States, of:
    (i) A crime of violence against:
        1. A minor offspring of the parent or guardian;
        2. The child; or
        3. Another parent or guardian of the child; or
    (ii) Aiding or abetting, conspiring, or soliciting to commit a crime described in item (i) of this item; or
(3) **Has involuntarily lost parental rights of a sibling of the child.**

(Emphasis added).

[7] The exceptions outlined in CJP § 12-302 do not apply here.

12

an appeal, application for leave to appeal, or petition for certiorari may be taken." Finding

little guidance in § 12-101(f)'s definition of "final judgment," we concluded that the statute

leaves the determination of the characteristics of an appealable final judgment to case law.

*Peat v. Los Angeles Rams*, 284 Md. 86, 90–91 (1978).

As we said in *Peat*: "[T]o be appealable a 'judgment must be so final as to determine

and conclude rights involved, or deny the appellant means of further prosecuting or

defending his rights and interests in the subject matter of the proceeding.'" *Id.* at 91

(quoting *U.S. Fire Ins. Co. v. Schwartz*, 280 Md. 518, 521 (1977), *overruled on other*

*grounds by Dep't of Pub. Safety & Corr. Servs. v. LeVan*, 288 Md. 533 (1980)).

In *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989), we set out further requirements of

a final judgment:

> If a ruling of the court is to constitute a final judgment, it must
> have at least **three attributes:** (1) it must be intended by the
> court as an unqualified, final disposition of the matter in
> controversy, (2) unless the court properly acts pursuant to Md.
> Rule 2-602(b),[8] it must adjudicate or complete the adjudication
> of all claims against all parties, **and** (3) the clerk must make a
> proper record of it in accordance with Md. Rule 2-601.

---

[8] Md. Rule 2-602: Judgments not disposing of entire action:

> (b) When allowed: If the court expressly determines in a
> written order that there is no just reason for delay, it may direct
> in the order the entry of a final judgment:
>     (1) as to one or more but fewer than all of the claims or
>         parties; or
>     (2) pursuant to Rule 2-501 (f)(3), for some but less than
>         all of the amount requested in a claim seeking
>         money relief only.

13

(Emphasis added).  The final judgment rule aims to "promote judicial economy and efficiency" by preventing piecemeal appeals after every order or decision by a trial court. *Sigma Reprod. Health Ctr. v. State*, 297 Md. 660, 665 (1983).

Judge Wilner, writing for this Court, identified three exceptions to CJP § 12-301's finality requirement:

> [W]e have made clear that the right to seek appellate review of a trial court's ruling ordinarily must await the entry of a final judgment that disposes of all claims against all parties, and that there are only three exceptions to that final judgment requirement: [(1)] appeals from interlocutory orders specifically allowed by statute; [(2)] immediate appeals permitted under Maryland Rule 2-602; [(3)] and appeals from interlocutory rulings allowed under the common law collateral order doctrine.

*Salvagno v. Frew*, 388 Md. 605, 615 (2005).  Petitioner does not contend that the second exception to the finality rule (Maryland Rule 2-602) or the third exception (the common law collateral order doctrine)[9] permit appeal of the juvenile court's waiver.  Rather, C.D. argues that CJP § 12-303(3)(x) allows the immediate appeal of the juvenile court's interlocutory order.

---

[9] To be appealable under the collateral order doctrine, the order must satisfy four requirements:

(1) it must conclusively determine the disputed question;
(2) it must resolve an important issue;
(3) it must be completely separate from the merits of the action; **and**
(4) it must be effectively unreviewable on appeal from a final judgment.

*See, e.g., Dawkins v. Balt. City Police Dep't.*, 376 Md. 53, 58 (2003) (citing *In re Foley*, 373 Md. 627, 633 (2003)) (emphasis added).

14

This Court has explored, on numerous occasions, the appealability of the juvenile court's interlocutory orders as permitted by CJP § 12-303(3)(x). *See, e.g.*, *In re Joseph N.*, 407 Md. 278 (2009) (order changing a permanency plan for foster care placement to a permanency plan for temporary supervised custody for the child's father); *In re Karl H.*, 394 Md. 402 (2006) (order establishing a permanency plan); *In re Billy W.*, 386 Md. 675 (2005) (order continuing a previously established permanency plan); *In re Samone H.*, 385 Md. 282 (2005) (order denying parent's motion for an independent clinical assessment to determine whether a bond existed between her and her children); *In re Damon M.*, 362 Md. 429 (2001) (order amending a permanency plan for reunification to a permanency plan for adoption, long-term care, or permanent foster care). In these cases, the Court has measured which orders in CINA cases "deprive[] a parent . . . of the care, custody, of his child . . . or chang[e] the terms of such an order." CJP § 12-303(3)(x).

In *In re Karl H.*, we considered whether a parent could appeal the juvenile court's modification of a permanency plan from one of unification alone to a concurrent permanency plan for both reunification and adoption.[10] 394 Md. at 426–27. Judge Greene, writing for a unanimous Court, explained that "in the context of custody cases, the focus should be on whether the order and the extent to which that order **changes the antecedent custody order.**" *Id.* at 430 (emphasis added). Using this rationale, we concluded that a mother could appeal a permanency plan change from one for reunification to a concurrent

---

[10] A concurrent permanency plan calls for implementing primary and secondary solutions for the child. COMAR 07.02.11.03(B)(16). For example, a concurrent permanency plan might provide for primary pursuit of family reunification while also exploring adoption by a non-relative.

permanency plan for reunification or adoption. *Id.* at 430–31. Moving from a plan for reunification to one that substantially increased the chances of adoption raised a sufficient possibility that the mother's fundamental right to parent her child would be impacted in a negative way. *Id.*

Most recently, we considered the appealability of a non-final order altering a permanency plan. We assessed whether a mother could appeal a juvenile court order transferring immediate custody of the child from the Department to the child's father. *In re Joseph N.*, 407 Md. at 282–83. The ultimate goal of the permanency plan—reunification with **only** the mother—remained the same. *Id.* at 283–84. Relying on authority discussed above, we concluded that the mother could appeal the juvenile court's transfer of immediate custody from the Department to the child's father, because it substantially increased the probability that the child would be reunified with the mother **and the father** rather than **solely** the mother. *Id.* at 292. Although the juvenile court did not amend the permanency plan's ultimate goal, granting the father immediate custody significantly reduced the likelihood that the mother would receive sole custody. *Id.* at 292–93. We also noted that the order represented a "meaningful shift in direction" for the mother and her ability to regain custody of her child. *Id.* at 292.

In a case closer to the present appeal, a mother appealed the juvenile court's denial of her request to compel an independent evaluation of the "bonding" between her and her children. *In re Samone H.*, 385 Md. at 285. Although the juvenile court denied the bonding study, the permanency plan remained unchanged. *Id.* at 315–16. We acknowledged the potential benefit of the independent evaluation requested by the mother. But the denial of

16

that beneficial service was not sufficient to justify an interlocutory appeal because the juvenile court's order did not change the permanency plan or the terms of any child custody order. *Id.* at 316. *Cf. In re Joseph N.*, 407 Md. at 290 (quoting *In re Karl H.*, 394 Md. at 430). Here too, C.D.'s request for a beneficial service—the continuation of reunification services—was denied. But as in *Samone H*, denial of this service did not deprive C.D. of the care or custody of C.E.

Unlike *Joseph N.* or *Karl H.*, in which the juvenile court altered immediate custody of the child or materially changed the terms of a permanency plan, C.E. has remained in the custody of relatives and the permanency plan has not changed. The Department's initial permanency plan and the continued permanency plan both called for C.E. to be ultimately placed with relatives. Accordingly, the order has not denied C.D. of the custody of C.E. Additionally, we cannot conclude that the order impacts C.D.'s "care" of C.E. Prior to the order, C.D. failed to utilize reunification services. After the order, this has not changed. The order merely relieved the Department of its obligation to foist services upon an uncooperative parent. Contrary to C.D.'s assertions, the waiver of reasonable reunification efforts has not worked a "death-knell" on her ability to regain custody and care of her child and represents no "meaningful shift in direction." *In re Joseph N.*, 407 Md. at 292. Since the order does not deprive C.D. of the "care or custody" of C.E., it is not immediately appealable via CJP § 12-303(3)(x).

We consider another of the Department's arguments to be particularly persuasive. We have recognized that the General Assembly permitted waiver of the reasonable efforts to prevent a CINA from languishing in foster care. The statutes regarding CINA and

17

reasonable reunification efforts have their origin in federal law. We explained the origin

of the State's mandate that departments provide reasonable reunification efforts in another

CINA case: *In re Adoption/Guardianship No. 10941 in Circuit Court for Montgomery Cty.*,

335 Md. 99, 104–06 (1994).

> During the 1970's, nationwide concern grew regarding the large number of children who remained out of the homes of their biological parents throughout their childhood, frequently moved from one foster care situation to another, thereby reaching majority without belonging to a permanent family. This phenomenon became known as "foster care drift" and resulted in the enactment by Congress of Public Law 96–272, the "Adoption Assistance and Child Welfare Act of 1980," [("AACWA")] codified at 42 U.S.C. §§ 670–679 (1988). One of the important purposes of this law was to eliminate foster care drift by requiring states to adopt statutes to **facilitate permanent placement for children** as a condition to receiving federal funding for their foster care and adoption assistance programs.

*Id.* at 104 (emphasis added). Congress conditioned federal funding for Maryland's foster

care programs on the General Assembly's adoption of provisions such as FL § 5-525. *Id.*

at 105. Specifically, Congress required states to develop care plans providing "a

description of the services provided to the parents, child, and foster parents to facilitate

return of the child to his or her own home or to establish another permanent placement for

the child." *Id.*

Congress then revised the AACWA when it passed the Adoption and Safe Families

Act of 1997 ("ASFA"). Pub. L. No. 105–89, 111 Stat. 2115 (codified at 42 U.S.C. Chapter

7, subchapter IV). The Court of Special Appeals explained that Congress passed the AFSA

in response to criticisms that the previous statutory framework permitted children to

18

languish in foster care while the departments sought to reunite hopelessly broken homes. *See In re James G.*, 178 Md. App. 543, 572–77 (2008) (citing Kathleen S. Bean, *Reasonable Efforts: What State Courts Think*, 36 U. Tol. L. Rev. 321, 326 (2005)). Professor Bean notes that that children lingered in foster care, not because of agency inaction, but because the departments fruitlessly tried to repair dysfunctional families. Kathleen S. Bean, *Reasonable Efforts: What State Courts Think*, 36 U. Tol. L. Rev. 321, 325–26 (2005). Critics of the statute's requirement for reasonable reunification efforts decried these consequences. *Id.* In response, Congress passed the ASFA, which contained the provisions now adopted by Maryland in CJP § 3-812 permitting the waiver of reasonable reunification efforts. *See In re Karl H.*, 394 Md. at 419–21.

We agree with the Department that permitting C.D.'s appeal of the juvenile court's order waiving reasonable reunification services will not serve the purposes of the CINA statutory framework. "A key purpose of the CINA law is to 'achieve a timely, permanent placement for the child consistent with the child's best interests[.]'" *In re Ashley S.*, 431 Md. 678, 712 (2013) (quoting CJP § 3-802(a)(7)). CJP § 3-812 provides a necessary safety valve to prevent the Department from forcing reunification efforts upon families that cannot be reunified. Upon consideration of the history of CJP § 3-812 and the purpose of CINA statutory framework—to provide a just and expeditious decision regarding the placement of a displaced child—we cannot allow C.D. to force yet another delay in the final resolution of C.E.'s case.

19

The Court of Special Appeals has issued conflicting opinions—one reported[11] and one unreported—on the issue of whether a parent may immediately appeal a juvenile court's order waiving reasonable reunification efforts. Today we settle this issue. The intermediate appellate court's 2016 decision in this case—upholding the juvenile court's waiver order—correctly denied C.D.'s appeal.

We hold that a juvenile court's order waiving a department's obligation to provide reasonable reunification efforts, while leaving a custody order and permanency plan unchanged, does not deprive a parent of care or custody of a child. Accordingly, C.D. has no statutory right to an immediate appeal within CJP § 12-303(3)(x). C.D.'s constitutional arguments regarding the application of CJP § 3-812 must await another day.

### III. CONCLUSION

We affirm the judgment of the Court of Special Appeals and hold that C.D. could not immediately appeal the juvenile court's order waiving the Department's obligation to provide reasonable reunification efforts.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

[11] *In re Joy D.*, 216 Md. App. 58 (2014).